UNITED STATES TRUST COMPANY *vs.* COMMONWEALTH.

Suffolk.   December 10, 1964. — January 28, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Commonwealth,* Hiring of property, Contracts, Financial matters. *Landlord and Tenant,* Covenant to restore premises, Lease to Commonwealth.

Respecting a lease of premises to the Commonwealth for a term of five
   years executed and approved in behalf of the Commonwealth by the
   officials specified in G. L. c. 8, § 10A, as amended through St. 1955,
   c. 317, § 1, the authority given by that statute was not confined to in-
   curring an obligation to pay rent, but was general and extended to in-

───────────────

clusion in the lease of a covenant by the Commonwealth to restore certain floors of the premises to a "typical floor arrangement of offices" at the termination of the lease, so that such covenant was not invalid ab initio under c. 29, § 26, in the absence of an appropriation supporting it [381, 383]; nor did a phrase "subject to available appropriation" appearing in the restoration covenant create a condition precedent to liability of the Commonwealth thereunder.   [384]

PETITION filed in the Superior Court on September 11, 1963.

A demurrer to the petition was sustained by *Moynihan,* J.

*Lawrence A. Sullivan* for the petitioner.

*John W. Wright,* Assistant Attorney General, for the Commonwealth.

WILKINS, C.J.   In this petition against the Commonwealth pursuant to G. L. (Ter. Ed.) c. 258, § 1, a landlord seeks to enforce a claim under a written lease for failure to honor a covenant to restore the premises prior to the end of the term.   A demurrer to the petition for failure to state a cause of action was sustained.   The case is here both on the petitioner's bill of exceptions and on its appeal.   We consider the appeal and dismiss the exceptions.   *Caissie* v. *Cambridge,* 317 Mass. 346, 347.

We summarize the allegations of the petition.   On June 8, 1956, the petitioner entered into a lease with the Commonwealth in compliance with G. L. c. 8, § 10A, as amended, whereby the Commonwealth rented the second to the seventh floors, inclusive, of a building on Court Street, Boston, owned by the petitioner and known as the United States Trust Company building.   The lease was for a term of five years commencing on July 1, 1956, rent being $124,068.56 yearly, payable monthly in arrears.   There was a covenant obligating the Commonwealth to restore five floors of the premises prior to the termination of the lease, which read, "THE LESSEE AGREES that it will, subject to available appropriation, at its expense, prior to the termination of this lease, restore the third, fourth, fifth, sixth and seventh floors of the demised premises to a typical floor arrangement of offices as shown on the attached 'Typical Floor Plan' which is made a part hereof, using material and finish generally

used in offices in other parts of the building of which the demised premises form a part.''

A copy of the lease annexed to the petition bears the signatures of the president and the treasurer on behalf of the petitioner and on behalf of the Commonwealth the signature of the Commissioner of Corporations and Taxation, the approval in Council attested by the Executive Secretary on June 28, 1956, and the signatures in approval of the State Superintendent of Buildings, of an Assistant Attorney General as to form, and of the complete membership of the Commission on Administration and Finance.[1]

The lease has terminated, and the respondent has vacated, but refuses to recognize any obligation to restore. The damages, entirely for breach of the restoration clause, are $250,000 with interest.

The demurrer was ''to the claim of the petitioner on the ground that the facts alleged in the petition do not set forth a cause of action against the Commonwealth of Massachusetts in that the lease attached to the petition and made a part thereof expressly conditions respondent's liability upon an appropriation and it does not appear from the petition that such appropriation has ever been made.'' An ''appropriation'' plainly refers to that mentioned in the covenant to restore and not to an appropriation for rent as required by G. L. c. 8, § 10A, as amended.

General Laws c. 29, § 26 (as amended through St. 1947, c. 636, § 1), provides in part, ''No obligation incurred by any officer or servant of the commonwealth for any purpose in excess of the appropriation [by the General Court] or allotment [by the Governor] for such purpose for the office, department or institution which he represents, shall impose any liability upon the commonwealth.'' As was said in *Baker* v. *Commonwealth,* 312 Mass. 490, 493, with respect to § 26 (as amended through St. 1939, c. 502, § 12), ''This broad provision was designed to require an official or a department to keep expenditures within the amount appropri-

---

[1] These were the Chairman, the Comptroller, Budget Commissioner, and State Purchasing Agent. G. L. c. 7, §§ 2, 3, 4, as amended.

ated and to protect the public credit by preventing the incurring of any indebtedness against the Commonwealth for the payment of which no provision had been made by the Legislature."[1] See *Opinion of the Justices,* 323 Mass. 764, 767.

Leases are governed by another and less rigid statute. This is G. L. c. 8, § 10A (as amended through St. 1955, c. 317, § 1[2]), where the first sentence is: "The commonwealth, acting through the executive or administrative head of a state department, commission or board and with the approval of the superintendent and of the governor and council and of the commission on administration and finance,[3] may lease for the use of such department, commission or board, for a term not exceeding five years, premises outside of the state house or other building owned by the commonwealth, if provision for rent of such premises for so much of the term of the lease as falls within the then current fiscal year has been made by appropriation." This provision grants general authority to execute such a lease. Such authority, first granted by St. 1924, c. 356,[4] was inspired by the report of the Attorney General, Pub. Doc. No. 12, 1923, p. 15, where it was stated: "There is no statute conferring authority on any official to execute leases in behalf of the Commonwealth. . . . I therefore recommend the passage of an act authorizing the execution of leases by the heads of departments, such leases, however, not to be effective without the approval of the Governor and Council." See 1924 House Docs. Nos. 1406 and 1567.

---

[1] The reference to allotment by the Governor (see G. L. c. 29, § 9B, as amended) was added by amendment in St. 1947, c. 636, § 1.

[2] Subsequent to the lease, two amendments are not material. St. 1960, c. 620, § 1. St. 1962, c. 290.

[3] The Commissioner of Administration was substituted for the Commission on Administration and Finance by St. 1962, c. 757, § 37.

[4] "When a state department, commission or board is authorized to procure quarters or to occupy premises outside of the state house or other building owned by the commonwealth, the executive and administrative head of such department, commission or board shall, in the name and behalf of the commonwealth, execute the lease, but no such lease shall be valid until approved by the superintendent of buildings and the governor and council."

A later report of the Attorney General, Pub. Doc. No. 12, 1932, p. 22, advised: ''There is no present authority as to the form of tenancy by the different State departments, commissions or boards, of other than State-owned property; and when leases are authorized the period for such is not prescribed. Uniformity in such authorization is desirable, and, in my opinion, the power to lease will result in a saving to the Commonwealth of rental costs.'' It was recommended (*Id.* fn. 1) that § 10A be amended by adding two provisions: (1) ''after appropriation has been made for the payment of rent for the current year'' and (2) ''for a term or terms not exceeding five years each.'' This led to St. 1933, c. 170, which contained such clauses.

In St. 1941, c. 267, the first sentence of § 10A was enacted in almost the same language as now (see *supra,* p. 381). A second sentence was added with respect to new leases where a term ''expires between the beginning of a fiscal year and the effective date of the general appropriation act for such fiscal year'' in certain circumstances authorizing ''such department, commission or board'' to hire or lease ''the same or different premises, for a term not exceeding five years, obligating the commonwealth to pay no greater aggregate amount of rent for any period than was paid for a corresponding period under the expiring lease.''[1] It does not appear from the petition, and so is not raised by demurrer, that the lease is a renewal made under circumstances rendering material the second sentence of § 10A. The respondent's attempted argument in this respect lacks foundation in the record.

Statute 1943, c. 440, § 2, amended the first sentence of § 10A, by adding the requirement of approval by the Com-

[1] ''If the term of a lease under which premises are being used for the purposes of a particular activity by any such department, commission or board expires between the beginning of a fiscal year and the effective date of the general appropriation act for such fiscal year and no appropriation for rent for said premises has been made and if the general court has not provided otherwise, the commonwealth, acting through the executive or administrative head of such department, commission or board, and with like approval, may hire or lease for such purposes the same or different premises, for a term not exceeding five years, obligating the commonwealth to pay no greater aggregate amount of rent for any period than was paid for a corresponding period under the expiring lease.''

mission on Administration and Finance.[1] This amendment was inspired by the Report of the Joint Committee on Ways and Means "for the purpose of making an investigation and study of any or all matters pertaining to the finances of the Commonwealth," 1943 House Doc. No. 1295, which stated at pp. 16–17, "The procuring of outside office space . . . is mainly a question of finance. . . . This is a budgetary matter and should be handled entirely by the Commission on Administration and Finance."

The respondent contends that c. 8, § 10A, authorizes the executive or administrative head of a State department, commission, or board to incur only an obligation to pay rent. On this argument c. 29, § 26, would relieve the respondent of liability under the covenant to restore. The contention of the Commonwealth is unacceptable. Section 10A was enacted to give authorization to heads of departments, commissions, and boards to enter into leases for premises outside State owned buildings. As the Attorney General said (*supra*, p. 382), it was believed that the power to lease would result in a saving of rental costs to the Commonwealth. This means complete leases and not merely the rent covenants in them. There are other clauses in the lease purporting to impose obligations upon the Commonwealth which would also be invalidated if the restoration clause should be held void. There is nothing in § 10A which gives the least cogency to the theory that the lease should be broken up and not treated as a complete unit. It would be an exercise in futility to invalidate a lease which the representatives of the Commonwealth are authorized to execute, and which has been executed with all the formalities as in the case at bar.

It is elementary that a construction should be given any statute, and this includes § 10A, which will enable the achievement of its purpose. In considering this question the basic rule must be recognized that alterations made by a tenant which might otherwise amount to waste do not con-

---

[1] Immaterial amendments prior to the date of the lease are St. 1945, c. 706, St. 1946, c. 585, St. 1952, c. 391, St. 1953, c. 638, and St. 1955, c. 317, § 1.

stitute waste if the landlord assents to them. *Pfister &
Vogel Co.* v. *Fitzpatrick Shoe Co.* 197 Mass. 277, 278. *Caw-
ley* v. *Jean,* 218 Mass. 263, 270. No one should expect that,
in general competition in the real estate market, owners of
buildings would be so content with the Commonwealth as
lessee that they would allow unlimited power of alteration
without obligation to restore.

Should the prospect become too burdensome of holding
the Commonwealth to such an obligation, landlords might
object altogether to any alterations by a State department,
commission, or board. A prohibition against all altera-
tions might prevent efficient use of premises. On the other
hand, if there be no such prohibition, greatly increased
rental payments might be required in place of a restoration
clause. There are also practical questions such as how far
in advance an appropriation for restoration of premises in-
telligently could be made, and how many years ahead of the
time for performance the Legislature would make such an
appropriation anyway.

The Commonwealth, in its determination to impose what
has every appearance of a forfeiture upon the petitioner,
has raised several arguments designed to confine the area
of decision to the bare words of the lease. The attempt
based on statute to brand the restoration clause void *ab
initio* we have already rejected. Reliance also is placed
upon the phrase inserted in the lease, "subject to available
appropriation." An examination of the original declara-
tion on file in the Superior Court discloses that these words
were added in typewriting by caret to a prepared form.
Other than to state that the words do not create a condition
precedent to obligation, we shall not speculate about them
without knowing the circumstances of the negotiation and
execution of the lease. There need be no concern as to the
control of the State's finances, as the lease was approved by
the Commission on Administration and Finance, and in the
future similar leases must be approved by the Commissioner
of Administration.

*Order sustaining demurrer reversed.*