SULA DODD & others[1] *vs.* COMMERCIAL UNION INSURANCE COMPANY.

Suffolk.    January 3, 1977. — July 19, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Consumer Protection Act. Practice, Civil,* Consumer protection case. *Jurisdiction,* Consumer protection case. *Insurance,* Unfair act or practice. *Statute,* Construction.

An action pursuant to G. L. c. 93A for unfair and deceptive practices by an insurance company was not barred by the provisions of c. 176D. [75-78]

General Laws c. 93A, § 2 (*a*), is applicable to insurance practices in its prohibition of unfair or deceptive acts or practices in any trade or commerce. [78-79]

Sales of motor vehicle insurance policies constitute sales of property and services within the meaning of G. L. c. 93A, § 9. [79-82]

An allegation by plaintiffs that they suffered losses of money as a result of unfair and deceptive practices by an insurance company in its sales to them of motor vehicle insurance policies stated a cause of action under G. L. c. 93A, § 9 (1). [82]

In an action against an insurance company for unfair and deceptive practices, the company was not exempt from the application of G. L. c. 93A, § 9, under § 3 (1) (*b*) where the transactions occurred primarily and substantially within Massachusetts. [82]

BILL IN EQUITY filed in the Superior Court on March 19, 1974.

---

[1] Rita Johns, Frederick Boston, Dorothy Neil and her two minor children, Olive Spence, Michael Tuitt, Kurtis Lewis, Benjamin Barnette.

Dodd *v.* Commercial Union Ins. Co.

Motions to dismiss and for summary judgment were heard by *Ford, J.,* and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Philander S. Ratzkoff* for the defendant.

*Ralph A. Donabed* for the plaintiffs.

*Francis X. Bellotti,* Attorney General, amicus curiae, *Paula W. Gold & Richard A. Gross,* Assistant Attorneys General, submitted a brief.

HENNESSEY, C.J.   The plaintiffs, individually and on behalf of other persons similarly situated, brought this action pursuant to G. L. c. 93A, §§ 2 (*a*), 9, against the defendant (Commercial) in March, 1974. The complaint alleges that Commercial employed unfair and deceptive settlement practices in handling personal injury and property damage claims under the Massachusetts no-fault motor vehicle insurance laws, G. L. c. 90, §§ 34M-34O, et seq., and requests that the court grant the plaintiffs (and others similarly situated) injunctive relief, reasonable attorneys' fees, and monetary relief in the amount of actual damages multiplied by three. Commercial filed a demurrer, treated as a motion to dismiss, in May, 1974, and a motion for summary judgment in December, 1975, both alleging that the complaint fails to set forth a cause of action under c. 93A. A judge of the Superior Court, relying on the pleadings and a stipulation of all material facts entered into by the parties solely for the purpose of deciding Commercial's motions, entered an interlocutory order denying the motions. At the request of the parties, the judge stayed the proceedings below and reported the matter of his interlocutory order to the Appeals Court.[2] This court granted Commercial's application for direct appellate review.

---

[2] The questions reported by the judge were as follows:

"A. Is defendant exempt from c. 93A under Massachusetts statutory law, including c. 176D?

"B. Is defendant exempt from c. 93A under the United States Code, including the Federal Trade Commission Act (15 U.S.C. §§ 41-46, 47-58) and regulations thereunder?"

In their complaint the plaintiffs allege the following facts. The plaintiffs all purchased compulsory motor vehicle insurance policies issued by Commercial and, while insured under these policies, they all submitted claims to Commercial for benefits due them under said policies. They all suffered monetary loss as a result of Commercial's unfair or deceptive acts or practices in settling these claims: — to wit, (a) failing to respond promptly to claims, investigate claims and settle claims; (b) failing to comply with G. L. c. 90, §§ 34M, 34O, G. L. c. 175, § 111F, G. L. c. 176D, § 3 (9); and (c) failing to disclose adequately the manner or time employed in the handling and satisfaction of insurance claims. The plaintiffs further allege certain facts which, if proved, would substantiate the unfair and deceptive acts and practices set forth in their complaint.

For the purposes of deciding the issues raised by Commercial's motions, and not otherwise, Commercial stipulates that the plaintiff's factual allegations are true. In addition, the parties stipulate that (a) Commercial is a Massachusetts insurance company, 20% of whose gross revenue is derived from transactions in interstate commerce; (b) all claims in this case arose from transactions and actions which occurred primarily and substantially within Massachusetts; (c) the Attorney General has not proposed any action against Commercial under G. L. c. 93A concerning Commercial's claim practices and has not notified the Federal Trade Commission or Commercial of any such proposed action; and (d) the Federal Trade Commission has not sent the Attorney General any written objection to proposed Attorney General action with respect to Commercial practices, or served Commercial with a complaint concerning its business practices. The parties agree that these stipulated facts comprise all the facts material to the issues raised by Commercial in its motions.

Commercial argues that it is exempt from application of c. 93A under § 3 (1) (b) of that chapter and is therefore not subject to actions pursuant to c. 93A, § 9. In the al-

ternative it argues that as a matter of legislative intent c. 176D alone governs unfair and deceptive insurance practices, and consequently c. 93A, and § 9 of that chapter in particular, do not apply to the insurance business. We disagree. We conclude that the provisions of c. 93A apply to unfair and deceptive insurance practices, and that the plaintiffs have stated in their complaint a cause of action pursuant to c. 93A, § 9.

1. General Laws c. 176D contains prohibitions and remedies which overlap provisions of G. L. c. 93A. Commercial maintains that c. 93A is inapplicable to activities which fall within this area of overlap because the Legislature intended that c. 176D preclude concurrent application of c. 93A and that c. 93A exclude the insurance business from the scope of its prohibitions and its remedies.

Chapter 176D, § 2, as appearing in St. 1972, c. 543, § 1, prohibits "unfair or deceptive act[s] or practice[s] in the business of insurance." Sections 5-7 authorize the Commissioner of Insurance to investigate insurance company affairs, to hold hearings to determine the legality of their practices, and to order insurance companies to cease and desist from engaging in acts or practices found to be unfair or deceptive.[3] Although c. 176D provides no remedy for individuals injured by unfair or deceptive insurance practices, c. 176D, § 8, provides that "[n]o order of the commissioner under this chapter or order of a court to enforce the same shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this commonwealth."[4]

Chapter 93A, § 2, inserted by St. 1967, c. 813, § 1, prohibits "unfair or deceptive acts or practices in the conduct of *any trade or commerce*" (emphasis added). The Attor-

---

[3] A person who violates such an order "shall ... pay to the commonwealth a sum not to exceed ten thousand dollars for each violation." G. L. c. 176D, § 10, as appearing in St. 1972, c. 543, § 1.

[4] The Legislature reenacted this language in its 1972 amendment to c. 176D, as appearing in St. 1972, c. 543, § 1, presumably with knowledge of its 1969 enactment of c. 93A, § 9.

ney General may investigate business practices he believes may be unfair or deceptive, and may bring an action in the name of the Commonwealth against any person he believes is using such practices. In addition, c. 93A, § 9 (1), as amended through St. 1973, c. 939, provides that "[a]ny person who purchases . . . services or property . . . primarily for personal, family or household purposes and thereby suffers any loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . may . . . bring an action . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper." The Legislature added this private remedy provision to c. 93A by St. 1969, c. 690, so that individual consumers could obtain relief through their own actions for injuries caused by violations of § 2. The Attorney General had been unable effectively to obtain relief for individual consumers because of the tremendous volume of complaints his office received after the enactment of c. 93A. *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 698-699 (1975).

Chapter 93A, § 3 (1) (*a*) (inserted by St. 1967, c. 813, § 1), also provides that nothing in c. 93A applies to "transactions . . . otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth." Consequently, neither the Attorney General nor an individual consumer can maintain an action under c. 93A based on practices permitted under c. 176D. See *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.,* 371 Mass. 117, 126-127 (1976) (procedure for ensuring lack of conflict). The provisions of cc. 176D and 93A, thus, overlap but do not conflict.

Chapter 176D on its face does not exclude application of c. 93A to unfair and deceptive insurance practices. Section 8 of that chapter clearly contemplates concurrent application of "other laws of this commonwealth." One such applicable law is G. L. c. 90, § 34M, a portion of the no-fault motor vehicle insurance statutory scheme, which provides that a person to whom benefits are due under a no-fault

policy shall be deemed a party to a contract with the insurer responsible for payment if the benefits due remain unpaid for more than thirty days. This right of action in contract cannot constitute the only other law contemplated by c. 176D, § 8, because c. 176D, § 3, prohibits acts and practices which need not result in delay of no-fault claims payment (and therefore do not necessarily make available the contract remedy provided by c. 90, § 34M) and because c. 176D, § 8, makes applicable to illegal insurance practices "other laws," not "other law."[5]

Nothing in c. 176D by implication excludes c. 93A from the phrase "other laws." The legislative failure to enact a private remedy for c. 176D violations does not show an intent to bar all private remedies for unfair and deceptive insurance practices. Like the Attorney General, the Commissioner of Insurance has limited resources with which to vindicate individuals' wrongs, so he too must focus his attention on insurance practices he finds most deleterious to the public interest, leaving small but valid claims unattended. Commercial argues that, although a private right of action would protect such claims, the Legislature did not enact such a remedy in its 1972 amendment to c. 176D. However, one can infer that this omission stemmed from the Legislature's knowledge that such a consumer right of action already existed pursuant to c. 93A, § 9, rather than from a desire to bar such actions. See note 3 supra. Indeed, the Legislature's reenactment of the § 8 saving clause in

---

[5] In so far as the plaintiffs in this case submitted personal injury claims to Commercial which have remained unpaid for more than thirty days, they have an action in contract based on Commercial's alleged violations of c. 176D, § 3, pursuant to c. 90, § 34M. It is not clear from the record whether they are pursuing this contract remedy as well as the remedy provided in c. 93A, § 9. However, even in the case at hand, the contract remedy should not be exclusive of the c. 93A remedy, because c. 93A, § 9, provides a remedy that is "neither wholly tortious nor wholly contractual in nature," Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975), for the statutory wrong created by c. 93A. Id. at 693. See p. 78 infra. Therefore, the c. 90, § 34M, contract remedy for failure to pay a valid insurance claim may not be coextensive with the c. 93A, § 9, sui generis remedy for violation of c. 93A, § 2.

the 1972 statute makes this inference most logical, and supports our conclusion that c. 176D does not bar application of c. 93A to unfair and deceptive insurance practices.

The mere existence of one regulatory statute does not affect the applicability of a broader, nonconflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 697-699 (1971). Cf. *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.,* 371 Mass. 117, 126-127 (plaintiffs can bring c. 93A action for unfair competition even though the Commissioner of Insurance may have administrative authority under c. 176D to correct the allegedly unfair practices); *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 585-587 (1972). Therefore, since c. 176D does not preclude application of c. 93A to insurance practices expressly or by implication, we conclude that c. 176D does not bar application of c. 93A to unfair or deceptive insurance acts or practices.

In addition, we hold that c. 93A, § 2 (*a*), covers insurance practices in its prohibition of unfair or deceptive acts or practices in any trade or commerce. Section 1 (*b*), as appearing in St. 1972, c. 123, includes in its definition of "any trade or commerce," see point 2 at pp. 79-80 *infra,* "the sale ... of any services and any property, tangible or intangible ... and any other ... thing of value wherever situate, and ... any trade or commerce directly or indirectly affecting the people of this commonwealth." Contrast G. L. c. 255D (Retail Installment Sales and Services Act), § 1, as appearing in St. 1967, c. 775, § 1 ("Services, any work, labor, or other services, purchased primarily for personal, family or household purposes ... but excluding insurance of all types"). We have previously held that c. 93A, § 2 (*a*), creates broad new rights, forbidding conduct not previously unlawful under the common law of contract and tort or under any prior statute. *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975). *Commonwealth* v. *DeCotis,* 366 Mass. 234, 244 n.8 (1974). Section 1 (*b*) includes insurance transactions in the broad sweep of c. 93A, § 2 (*a*),

at least in so far as they involve sales of things of value and constitute commerce which affects the people of the Commonwealth.[6] Therefore, c. 176D, § 3, and c. 93A, § 2, have concurrent application to unfair or deceptive insurance acts or practices, and the appropriate public officials can take action under either statute to eliminate such acts or practices.

2. Commercial argues that, even if c. 93A, § 2 (*a*), applies to unfair and deceptive insurance practices, c. 93A, § 9, does not provide a private remedy for such practices because insurance policies do not constitute services or property within the meaning of § 9 (1), see p. 75-76 *supra.*[7]

---

[6] Commercial argues that, despite the expansive scope of c. 93A, it excludes insurance transactions from coverage, because insurance transactions are not included in § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45[a][1] [1970]), which is a guide to interpretation of § 2 (*a*). See G. L. c. 93A, § 2 (*b*). However, FTCA § 5(a)(1) does not cover Massachusetts insurance practices *because* these practices are subject to Massachusetts regulation. 15 U.S.C. § 1012(b) (1970). Indeed, c. 176D was originally enacted in response to a Federal statute which invited State preemption of Federal jurisdiction over insurance acts and practices and because of a Federal policy to leave to the States the task of insurance regulation. G. L. c. 176, § 1. Hence, we do not read c. 93A, § 2 (*b*), as evincing a legislative intent to create an implied exception to c. 93A coverage. This reading of § 2 (*b*) is consistent with the existence of express exceptions to c. 93A coverage.

[7] In addition, in a letter sent to this court after oral argument, Commercial argued for the first time that the plaintiffs' action must fail because they have not shown, in their demand letter or complaint, any loss of money or property resulting from Commercial's allegedly wrongful practices. See c. 93A, § 9 (1), as construed in *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 44-45 (1975). Although it can be concluded that this issue is not properly before us, we note that § 9 requires, at the pleadings stage of litigation, *allegations* of loss of money or property. *Id.* at 45. In *Baldassari,* the plaintiffs alleged "severe emotional distress" alone as their injury. *Id.* at 44-45. No loss of money or property can be inferred from such an allegation. In this case, as in the case of *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 691 (1975), cited with approval in *Baldassari, supra* at 44, the plaintiffs have alleged that Commercial's activities have caused them monetary losses. Moreover, the plaintiffs complain not only that Commercial has misbehaved in processing their insurance claims but also that these claims are as yet unsettled, despite statutory mandates for rapid settlements. Clearly, a complaint for monies owed but unpaid alleges "loss of money" within the meaning of c. 93A, § 9 (1), and "reasonably describ[es] ... the injury suffered" within the meaning of § 9 (3).

Section 9 (1) makes a private remedy available to any person suffering a loss of money or property in a transaction involving purchase of services or property for personal use as a result of the employment of an unfair or deceptive practice. *Slaney, supra* at 701-704. Contrast c. 93A, §§ 2 (*a*), 1 (*b*). Section 9 thus creates a private remedy whose scope is narrower than the wrong created by § 2, and Commercial maintains that this distinction in scope bars applicability of § 9 to unfair and deceptive insurance practices.

We construe § 9 in a manner consistent with its legislative purpose. *United States Trust Co.* v. *Commonwealth,* 348 Mass. 378, 383 (1965). Its purpose is to provide individual consumers with a remedy for injuries from § 2 violations, see pp. 75-76 *supra,* and thus to further the basic policy of c. 93A, "to regulate business activities with the view to providing . . . a more equitable balance in the relationship of consumers to persons conducting business activities." *Commonwealth* v. *DeCotis,* 366 Mass. 234, 238 (1974). In achieving that purpose the Legislature wished to protect business from frivolous and unforeseeable consumer litigation. Therefore it limited the scope of § 9 by excluding practices involved in sales of "thing[s] of value," practices which merely "affect" citizens of this Commonwealth, practices which do not result in loss of money or property, and practices unrelated to sales (or lease) transactions. It did not exempt from the remedial provisions of § 9 any class of business which customarily engages in consumer transactions. Such an exemption would be inconsistent with the general purpose of c. 93A and the purpose of § 9 in particular. Hence, under the statutory scheme set forth in c. 93A, only the Attorney General, who represents the public's interest in fair and honest business practices, can take action based on practices in atypical consumer transactions, or practices whose harm to consumers is indirect. However, consumers directly affected by unfair business practices in common sales transactions can recover for their concrete injuries, however small, under § 9.

We conclude that sales of motor vehicle insurance policies constitute sales of property and sales of services

within the meaning of § 9 (1), and, therefore, Commercial is not exempt as matter of law from § 9. Insurance policies are contracts in which the insurer promises to pay money to the insured or to third parties on the happening of a specified event. This contractual right to payment is a recognized property right. 1 G.J. Couch, Insurance 2d § 1.11 (1959). 44 C.J.S. Insurance § 223, at 932 (1945). Thus, sales of motor vehicle insurance policies are sales of personal property. Moreover, the terms of an automobile insurance policy generally include services in connection with ongoing protection of all persons within its purview. Commercial sells its claims handling services as part of its compulsory motor vehicle insurance package. Therefore, sales of its policies constitute sales of both property and services within the meaning of § 9.

Although Commercial is not exempt from application of § 9 as matter of law, we note in passing that Commercial is subject to the remedial provisions of § 9 only as to those plaintiffs who show that they are *purchasers* of the insurance policies under which their claims are pressed and that their losses are attributable to their purchases of Commercial's insurance packages. Section 9 provides a remedy for persons who purchase property or services and thereby suffer a loss. See pp. 75-76 *supra.* Persons who are additional insureds under an insurance policy are not "purchasers" of that policy within the meaning of § 9 because they did not participate in the consumer transaction (sale of insurance package) on which § 9 is predicated. Furthermore, the losses such persons sustain by reason of an insurer's failure to settle their claims, are not losses attributable to sales of insurance.[8] Policyholders, on the other hand, are purchasers of insurance packages within the meaning of § 9. More-

---

[8] The plaintiffs' complaint alleges that all the named plaintiffs themselves purchased the insurance policies under which they submitted claims. For the purposes of deciding the motions before us Commercial accepts the plaintiffs' factual allegations as true. Nonetheless, we note that material in the record indicates that the named plaintiffs are not all purchasers of the policies which cover their claims. Some plaintiffs appear to be described, or additional, insureds, not purchasers.

over, the losses they sustain when an insurer fails to settle claims under the policies they purchased are attributable to their purchases. They purchased a claim handling service (to be rendered when needed) as part of an insurance package, and an insurer's failure to deliver that service is a failure of contract performance. Additionally, if an insurer sells insurance policies with implied but false representations that it operates a proper claims handling system, policyholder losses could arise from deception in the sale of those policies.

The plaintiffs in this case have alleged losses of money because of unfair and deceptive practices by Commercial in its sales to them of motor vehicle insurance policies. This allegation states a proper cause of action under G. L. c. 93A, § 9 (1), and, if proved, can support a finding for the plaintiffs.

Finally, we find that Commercial is not exempt from application of c. 93A, § 9, under c. 93A, § 3 (1) (*b*), inserted by St. 1967, c. 813, § 1, which provides that "(1) [n]othing in this chapter shall apply to ... (*b*) trade or commerce of any person of whose gross revenue at least twenty per cent is derived from transactions in interstate commerce, excepting however transactions and actions which (*i*) occur primarily and substantially within the commonwealth, and (*ii*) as to which the Federal Trade Commission or its designated representative has failed to assert in writing within fourteen days of notice to it and to said person by the attorney general its objection to action proposed by him and set forth in said notice." The parties agree that more than 20% of Commercial's gross revenues derive from interstate commerce, that the transactions involved in this case occurred primarily and substantially in the Commonwealth, that the Attorney General sent no notice proposing action against Commercial to Commercial or to the Federal Trade Commission, and that the commission has not objected to any action. Thus, the parties effectively agree that the elements of § 3 (1) (*b*) (*i*) are present in this case and that the elements of § 3 (1) (*b*) (*ii*) are not.

We need not decide here whether the exception to the

§ 3 (1) (*b*) exemption recited above requires compliance with § 3 (1) (*b*) (*ii*) in § 9 (1) suits which lack the Attorney General's involvement. In this case, the procedural requirements of § 3 (1) (*b*) (*ii*) have no application because the Federal Trade Commission lacks jurisdiction over the actions involved, and could never have objection to proposed action of the Attorney General vis à vis insurance practices in Massachusetts. See note 6 *supra.* We do not require compliance with procedures when they clearly serve no useful purpose. Therefore, the exception set forth in § 3 (1) (*b*) has been properly invoked and c. 93A applies in its entirety to any deceptive or unfair actions or practices by Commercial concerning the settlement of claims under the insurance policies it sold to the plaintiffs.

Chapter 176D does not preclude application of c. 93A to unfair and deceptive insurance practices. Commercial is not exempt from c. 93A. Therefore, the judge properly denied Commercial's motion to dismiss and motion for summary judgment. It follows that his questions are answered in the negative and the case is remanded for trial.

*So ordered.*