Shirley **FRANKLIN** and Benjamin Franklin, Plaintiffs,

v.

The **ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA,** et al., Defendants.

Civ. A. No. 82–0480–K.

United States District Court, D. Massachusetts.

July 25, 1984.

Elizabeth Rodgers, Joan Lenington, Kehoe, Doyle, Playter, Novick & Strimaitis, Marjorie Heins, Mass. Civil Liberties Union Foundation, Boston, Mass., for plaintiffs.

Philip Riley, Badger, Sullivan, Kelley & Cole, Boston, Mass., Herbert C. Hunt, Columbus, Ohio, for United Commercial Travelers, Joseph Moran and Local No. 466.

## Opinion

KEETON, District Judge.

Plaintiffs have moved for partial summary judgment. The facts relevant to this motion are undisputed. Plaintiff Shirley Franklin, a black woman, is employed on the police force of the City of Lynn. Members of the force who so desire may apply to join the local lodge of the Order of United Commercial Travellers ("UCT"), a fraternal benefit society providing insurance to its members. Persons wishing membership in the society and coverage under its insurance plan must apply through a local council. See UCT Constitution and By-Laws, Art. XI, § 2, Exh. 5. The application is subject to approval by the local lodge and by the Supreme Office of the order. Docket No. 37, No. 12. Members are eligible for certain insurance benefits, including compensation for work time lost due to medical problems, reimbursement of some medical expenses, and lump sum payments for death or disability. In addition to receiving insurance coverage from the UCT, the members of Local Lodge 466, which is open to members of the Lynn police department, also have access to an affiliated clubhouse for recreational uses. Insurance comparable to that provided by UCT is not provided by the City of Lynn itself to police officers. The UCT recruits members for its lodge through solicitation by police department personnel of their fellow officers. Police officers also serve as lodge officials.

Franklin applied for membership in the society in 1980 but was rejected. Franklin claims that her rejection was caused by her race and sex. She instituted this action against the UCT and Local Lodge 466, seeking damages and injunctive relief under federal law, 42 U.S.C. §§ 1981 and 1982, with pendent state law claims under Mass.Gen.Laws ch. 151B, § 4(14).

In response to an interrogatory, defendant Local Lodge 466 admitted that Shirley Franklin was denied membership because of her sex. See Docket No. 37, ¶ 25. The UCT's constitution and by-laws provided in 1980 that:

> Any male citizen of the United States, Canada or British Possessions in North America ... who is classified as a preferred risk may become an insured member of this Order, if found acceptable, provided an applicant may be accepted as a substandard risk at a rating offered by the Order.

The constitution was amended in 1981 to allow women into membership. However, Shirley Franklin has not since been admitted into Local Lodge 466. Defendants do not admit that she was denied membership and coverage because of her race, and the present motion does not concern the claim

of liability for discrimination because of plaintiff's race.

## I.

This motion presents a close and unsettled question about the liability of a private organization, which has features of both a commercial enterprise and a social club, for discrimination on the basis of sex. The difficulty of this question is increased by the fact that, since plaintiffs do not in this motion assert any basis of liability for sex discrimination under federal law, I am called upon to predict what the response of Massachusetts courts will be when confronted with this question.

The fraternal benefit society, also known as a mutual benefit society, is an ancient form of organization under which members unite to provide protection for each other. Quite often, these societies are organized by persons of the same religion, occupation or other group. 2A *Couch on Insurance* 2d, § 20.37 at 52–53 (1984). In recognition of the distinctive features of this type of organization, Massachusetts provides, as do many other states, a special statutory framework governing the operations of these societies. *See* Mass.Gen.Laws ch. 176. Included in this chapter is the following provision:

> Societies shall be governed by this chapter, and shall be exempt from all other provisions of the insurance laws of the commonwealth ... not only in governmental relations with the commonwealth, but for every other purpose; and no law hereafter enacted shall apply to them unless they are expressly designated therein ...

Mass.Gen.Laws ch. 176, § 50.

Massachusetts law specifically prohibits sex discrimination in the area of insurance. Mass.Gen.Laws, ch. 175, § 24A. No comparable provision applying specifically to fraternal benefit societies appears in chapter 176.

Plaintiff points to the provisions of the Massachusetts statute prohibiting sex dis-

crimination in a number of areas, including employment and housing. Mass.Gen.Laws, ch. 151B, § 4. That statute provides in relevant part that it is an unlawful practice

> for any person furnishing credit or services to deny or terminate such credit or services ... because of such individual's sex ...

*Id.,* § 4(14).

The question presented by this motion then is this: does Massachusetts law subject defendants, in the circumstances of this case, to any prohibition against sex discrimination in the granting of membership and insurance coverage?

## II.

Plaintiffs do not argue that the statute prohibiting sex discrimination by insurance companies, which is contained in the chapter devoted to regulation of insurance companies, *i.e.* ch. 175, § 24A, applies to fraternal benefit societies. Instead, plaintiffs argue that the general ban on sex discrimination, found in ch. 151B, § 4, prohibits discrimination in the offering of insurance coverage and that fraternal benefit societies are not exempt from this general prohibition.

No case has come to my attention in which a Massachusetts court has applied ch. 151B, § 4(14), to the furnishing of insurance coverage. Nonetheless, the wording of this statute, which forbids discrimination in the furnishing of credit and services, is quite broad. Moreover, the Supreme Judicial Court has held that the word "services" in the state consumer protection statute, Mass.Gen.Laws, ch. 93A, is interpreted to include the provision of insurance. *Dodd v. Commercial Union Insurance Co.,* 373 Mass. 72, 365 N.E.2d 802 (1977). The analogy is instructive.

Defendants argue that ch. 151B should not be applied to insurance because there is already a statute specifically addressing discrimination in the insurance industry. A factor bearing on statutory construction in

situations such as this was noted in *Dodd, supra,* 365 N.E.2d at 805: "The mere existence of one regulatory statute does not affect the applicability of a broader, non-conflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter." In this case, there is no apparent conflict between the proscription of discrimination in the insurance business, ch. 175, § 24A, and the broader prohibition contained in ch. 151B, § 4(14). Instead, these two statutes provide different enforcement mechanisms for remedying the problem of discrimination. Enforcement of ch. 175 and its various provisions rests with the state Commissioner of Insurance, who is authorized to investigate complaints of potential violations and then to report the facts to the Attorney General. Mass.Gen.Laws ch. 175, § 3A. The Attorney General is empowered at the Commissioner's request to bring an action for injunctive relief against the insurer. *Id.,* § 3B. On the other hand, ch. 151B creates for persons suffering from discrimination a private right of action for damages or injunctive relief. *Id.,* § 5. The same alternative avenues of enforcement were present in the statutes considered by the court in *Dodd.* In that case, the court held that ch. 93A, which created a private cause of action for aggrieved consumers, was not preempted by the statute more specifically directed to the insurance industry, which provided for enforcement by the Attorney General.

Defendants point to a recent opinion by the state Attorney General as support for their proposition that § 4(14) does not apply to insurance. In this opinion, Op.Att. Gen. 1983–84 No. 7 (May 18, 1984), the Attorney General was responding to a question from the chairmen of the legislature's Joint Committee on Insurance, who asked the Attorney General's opinion on whether proposed legislation, which prohibited discrimination on the basis of sex in the provision of insurance, would affect membership policies of fraternal organizations. The proposed legislation would have specifically applied to fraternal benefit societies, as well as other insurers. The Attorney General stated that these bills would not affect the membership policies of these organizations. *Id.* at 13.

I do not read this opinion or the fact that the opinion was requested as support for the proposition that § 4(14) does not apply to insurance companies. The proposed legislation was broadly written to encompass a number of types of insurers. As the Attorney General noted in his opinion, there already exist several statutory prohibitions against discrimination by insurance companies. *Id.* at 9 n. 11. The fact that the legislature was contemplating a new bill, which might consolidate, enlarge or clarify prohibitions against discrimination, does not mean that in no circumstances could any existing statutory prohibitions be interpreted as applying to insurance offered by fraternal benefit societies.

It is true that, in listing the statutes which prohibit discrimination by insurance companies, the Attorney General did not mention ch. 151B, § 4(14). The listing he provided, however, was not declared to be comprehensive and appears to have been offered only by way of example. Also, ch. 151B has not been applied to the provision of insurance in any case of which I am aware, and, as noted above, the proposed interpretation of that statute as applying to insurance companies presents a new question. In these circumstances, it would be inappropriate to infer that the Attorney General made a considered decision to exclude this statute from his illustrative list. Massachusetts courts have construed broadly the prohibition of discrimination in the furnishing of services enacted in ch. 151B, § 4(14). *LaPierre v. MCAD,* 354 Mass. 165, 236 N.E.2d 192 (1968). I find no authority for interpreting this statute as not applying to the provision of insurance services, either by insurers in general or by fraternal benefit societies in particular. I conclude that the issue before me is one of first impression.

### III.

Defendants argue that even if ch. 151B, § 4(14), applies to insurance transactions generally, fraternal benefit societies are exempt by the operation of ch. 176, § 50, the statute declaring that insurance laws that do not expressly refer to fraternal benefit societies do not apply to them.

Exemptions of this type have been provided by legislatures as part of the special statutory treatment afforded fraternal benefit societies in recognition of the distinctive features of these societies. Despite such exemptions, some statutes aimed not merely at insurers but more broadly at a range of organizations have been enforced against fraternal benefit societies even though the statutory text did not specifically designate those societies. For example, *Supreme Council of the Royal Arcanum v. State Tax Commission*, 358 Mass. 111, 260 N.E.2d 822 (1970), held that fraternal benefit societies were not exempt from the state sales tax, even though the sales tax statute did not designate fraternal benefit societies. Other courts in other states have similarly concluded that certain laws of broad scope apply to fraternal benefit societies even if they do not explicitly refer to those societies. An example is the holding that, despite a statute much like § 50, Utah's Unfair or Deceptive Acts or Practices Act applied to fraternal benefit societies, even though it did not refer explicitly to them. "The purpose of this statute [banning unfair or deceptive acts] is to protect the public; the legislature has used all inclusive, almost redundant wording, and provided a stringent penalty for its violation." *In re American Buyers Insurance Co.*, 2 Utah 2d 205, 271 P.2d 844, 845 (1954).

Defendants argue, nonetheless, that the Massachusetts legislature never intended that the ban on discrimination in ch. 151B § 4(14) apply to private associations like fraternal benefit societies. As support for this proposition, they cite the Opinion of the Attorney General, *supra*, arguing that it reflects quite clearly a concern expressed by the joint chairmen of the legislative committee on insurance to draft anti-discrimination statutes which would not affect the membership policies of these societies. I cannot read this document, which might be taken as an expression of the intent of the legislators who made a request for an opinion in 1984, as expressing the intent of the legislature in 1973, when it enacted ch. 151B, § 4(14). More significantly, in any event, I conclude that even if the legislature had manifested an intent, when enacting the anti-discrimination statute, to exempt from its impact the membership policies of fraternal benefit societies, that exemption would not protect the defendants on the specific facts of this case. These conclusions emerge from closer examination of the reasons for the exemption and the distinctive facts of this case.

 The rationale for giving special treatment to fraternal societies is that such organizations are primarily private groups, dedicated to social, recreational or philanthropic activities, with the provision of insurance as supportive of their broader functions. Appleman, *Insurance Law and Practice*, §§ 10141, 10143 at 272, 282 (1945). *See also* 2A *Couch on Insurance* 2d § 20.12 at 28 (2d ed. 1984). In the distinctive facts of this case, however, defendants have not functioned in such a purely private and social role. Instead, Local Lodge 466 is closely affiliated with a city police department. The UCT benefits from this consensual association with the city in that it receives support for its activities as a result of solicitations of membership by police officers who serve as lodge officials. Moreover, it benefits still more because of the inducements to police officers arising from the fact that the city provides them with no other option for obtaining the type of insurance benefits they can obtain through Local Lodge 466. Insurance obtained through employment at a cost lower or on terms more advantageous than might be available on the private market is an important economic bene-

fit. It is against the formally declared public policy of the Commonwealth of Massachusetts for this important benefit to be denied to any employee, much less a public employee, because of gender.

I conclude that Massachusetts courts will hold that the state legislature, which sought to provide women with broad and effective protection from sex discrimination in employment, did not exempt a fraternal benefit society that enters into a consensual arrangement in which it is the only potential source of a significant insurance benefit for municipal employees.

This conclusion is reinforced by a significant body of authority supporting the proposition that associations that ordinarily would be exempt from laws applying to public or commercial enterprises will lose that exemption if they alter their purely private character in some significant manner. For instance, courts have reviewed private associations' membership decisions in cases in which exclusion from the association would affect the public welfare and cause serious economic harm to the individual excluded. *See, e.g., Falcone v. Middlesex County Medical Society,* 34 N.J. 582, 170 A.2d 791 (1961). The Supreme Court has recently held to be constitutional a state's decision to regulate private organizations which, by providing activities or services open to the public, make themselves "public accommodations" within the meaning of an anti-discrimination statute. *Roberts v. U.S. Jaycees,* — U.S. —, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In some cases, the relationship between a so-called private association of public employees and the public employer becomes so close that the association is held to be subject to constitutional strictures applied to governmental activities. *Adams v. Miami Police Benevolent Ass'n,* 454 F.2d 1315 (5th Cir.), *cert. den.,* 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972) (because of several factors, including membership by a large percentage of police officers and regular solicitation of new members by fellow officers on the job, association is subject to 42 U.S.C. § 1983 for race discrimination.) I need not determine whether, on the facts of this case, defendants are engaged in "state action." Nor need I reach any conclusion about the applicability of ch. 151B, § 4(14) generally to fraternal societies that operate in the purely private manner traditionally characteristic of those groups. Instead, I hold only that, given the distinctive role the defendants have undertaken in their consensual arrangement with the City of Lynn, the law of Massachusetts subjects them to the statutory ban on sex discrimination contained in ch. 151B, § 4(14).

Having concluded that ch. 151B, § 4(14) applies to this case, I further conclude that, on the basis of the undisputed facts in the record, defendant is liable for sex discrimination in violation of state law for denying Shirley Franklin access to the insurance benefits incident to membership in the UCT in 1980. Partial summary judgment for plaintiffs will be entered accordingly. A conference will be scheduled on 2 August, 1984 at 3:30 PM to consider a schedule for hearing and disposition of all other issues in the case.

### ORDER

For the foregoing reasons, it is ORDERED:

Plaintiff's motion for partial summary judgment is granted.