Frank THORPE, Plaintiff, Appellant,

v.

MUTUAL OF OMAHA INSURANCE COMPANY, Defendant, Appellee.

No. 91–2306.

United States Court of Appeals, First Circuit.

Heard July 28, 1992.

Decided Jan. 29, 1993.

---

Edward J. McCormick, III, Norfolk, MA, was on brief, for plaintiff, appellant.

Edward S. Rooney, Jr., Boston, MA, was on brief, for defendant, appellee.

Before CYR and BOUDIN Circuit Judges, and HORNBY,* District Judge.

* Of the District of Maine, sitting by designation.

BOUDIN, Circuit Judge.

Appellant Frank Thorpe sued Mutual of Omaha Insurance Company ("Mutual of Omaha") for alleged emotional distress and violation of Mass.Gen.L. chs. 93A and 176D. The claims were based on Mutual of Omaha's surveillance of Thorpe in connection with Thorpe's receipt of disability benefits under an insurance policy. Thorpe appeals from rulings below granting summary judgment in favor of Mutual of Omaha on the statutory claims and directing judgment for Mutual of Omaha on the emotional distress claim. We affirm both rulings.

Thorpe is a former police officer who sustained serious injuries, including a contusion to the heart, in an employment-related automobile accident in 1975. As a result, Thorpe retired from the police force and began collecting monthly total disability benefits under a policy with Mutual of Omaha. In order to verify Thorpe's continued eligibility, Mutual of Omaha representatives regularly visited Thorpe at his home and inquired into his daily activities and prospects for rehabilitation.

Beginning in 1982, personal contact with Thorpe became increasingly difficult; on several occasions, Thorpe either was not at home or did not come to the door. The problem reached a head in early 1983, when Mutual of Omaha was unable to contact Thorpe at home despite repeated attempts. Suspecting that Thorpe might be working during the day, Mutual of Omaha began surveillance of Thorpe in April 1983. On the second day of surveillance, Thorpe was driving his former wife to work when he noticed that he was being followed by another car. Thorpe took evasive action and eventually ended up behind the tailing car, then being driven by the insurance company's agent, Michael Boyd. According to Thorpe and his former wife, Thorpe pulled up alongside Boyd's car, at which point Boyd tried to ram his vehicle into Thorpe's car before driving off, an allegation denied by Boyd. As Thorpe was driving home, he experienced temporary chest pains.

Undeterred, Mutual of Omaha resumed its surveillance of Thorpe one month later, this time employing a professional Pinkerton agent. Thorpe again realized that he was being followed and, as with Boyd, claimed that the Pinkerton agent tried to hit his vehicle. The Pinkerton agent denied trying to hit Thorpe's car. The insurance company never established that Thorpe was working and, to this day, he continues to receive monthly disability payments.

On April 18, 1986, Thorpe brought this action against Mutual of Omaha in the Superior Court of Massachusetts, the case being then removed to federal court on diversity grounds. Thorpe asserted claims for intentional and negligent infliction of emotional distress and for violation of Mass.Gen.L. chs. 93A and 176D. After some discovery, Mutual of Omaha moved for summary judgement on all counts. The district judge granted summary judgment only on the statutory claims, ruling that the "demand letter" required under chapter 93A did not sufficiently specify the injury suffered and damages claimed by Thorpe.

The remaining tort counts were tried before a jury and a different judge in November 1991. At the close of all the evidence, Thorpe voluntarily dismissed his claim for negligent infliction of emotional distress, leaving only the intentional infliction claim to be decided by the jury. Shortly after the jury began deliberations, the foreman notified the trial judge in writing that the jury was deadlocked five to one. Two more notes followed, one describing the hold-out juror as possessing "deep ideological beliefs that will not be changed by any arguments," and the other saying that the hold-out "developed a bias" toward one of the parties "during the course of the trial and deliberations...."

At this point, the trial judge considered declaring a mistrial but, before doing so, posed the following questions to the jury over the objections of Thorpe's counsel:

1. Did Mr. Boyd attempt to ram plaintiff's car?

2. Did Mr. Doucher (the Pinkerton agent) ... attempt to ram plaintiff's car?

The jury promptly answered both questions in the negative. Having obtained these findings, the court discharged the jury and directed "judgment as a matter of law" for Mutual of Omaha, the rubric that has replaced directed verdicts and judgments n.o.v. *See* Fed.R.Civ.P. 50. This appeal ensued.

▬▬▬ Thorpe's statutory claim rests upon Mass.Gen.L. ch. 93A, prohibiting unfair or deceptive acts or practices in the conduct of trade or commerce.[1] As a prerequisite to suit, chapter 93A requires the submission of a demand letter "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass.Gen.L. ch. 93A § 9(3). The twin reasons for the demand letter are, first, to encourage negotiation and settlement and, second, to control the amount of damages recoverable by the plaintiff. *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975). If a reasonable settlement offer is rejected by the plaintiff, recovery will be limited to the amount of the offer. *Id.*

The district court in this case found that Thorpe's demand letter was specific about neither the alleged physical harm sustained nor the damages requested. The letter from Thorpe's lawyer, dated February 3, 1984, asserts that the insurance company's "surveillance technics [sic] and extensive harassment" inflicted on Thorpe "severe emotional distress, as well as physical injuries, great pain of body and mind, and mental anguish." There was, however, no identification of any physical injuries and, when Mutual of Omaha wrote back inviting Thorpe's attorney to identify and provide evidence of "any specific injury or harm to your client," its letter went unanswered. Thorpe's letter also did not contain any damage figure which might have given some dimension to his claims.

We agree with the district court that Thorpe's letter did not satisfy the statute. The Massachusetts courts have said that "[i]t is ... essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and enables him to make 'a reasonable tender of settlement.' "[2] Given the failure to specify at least the physical injuries claimed, Thorpe's letter provided no adequate basis for the insurance company to appraise the value of the claim or frame a settlement offer.

Thorpe's second ground for reversal centers on the trial court's submission of questions to the jury on the issue of attempted "ramming" of Thorpe's car. Federal Rule of Civil Procedure 49(a) permits the court to require from the jury "a special verdict in the form of a specific written finding upon each issue of fact." Thorpe claims that the procedure was inappropriate in this case, arguing that the jury did not return a general verdict, that Rule 49 does not provide for submission of questions to a deadlocked jury, and that one of the jurors was biased and therefore incapable of answering the questions impartially.

▬▬▬ The first two contentions were not made below. Arguments not made to the district court in civil cases are foreclosed on appeal unless their inclusion would "virtually ... insure appellant's success" and exclusion would result in a "gross miscarriage of justice." *Jones v. City of Somerville*, 735 F.2d 5, 7 (1st Cir.1984). Rule 49(a) explicitly permits special verdicts in lieu of general verdicts, *compare* Fed. R.Civ.P. 49(b) (providing for a general verdict with interrogatories), and while Rule 49 does not specifically address the submission of questions to a jury after a deadlock, neither does it expressly preclude this prac-

---

**1.** Thorpe also invoked chapter 176D prohibiting unfair and deceptive insurance practices, but that statute provides no private cause of action and is enforceable only by the commissioner of insurance. *See Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 365 N.E.2d 802 (1977) (chap-

ter 93A encompasses unfair and deceptive insurance practices).

**2.** *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 288, 475 N.E.2d 727, 736 (1985) (quoting *Slaney*, 366 Mass. at 704–05, 322 N.E.2d at 779).

tice. Patently, there was no clear violation of the Federal Rules or any miscarriage of justice.

■ Thorpe's third argument, properly made at trial and preserved for appeal, is that it was error to submit questions to the jury because one of the jurors was biased. The short answer is that the jury foreman's statements do not establish or even strongly suggest bias in the technical sense that would require removal of the hold-out juror or a mistrial. *Compare, e.g., United States v. Heller*, 785 F.2d 1524 (11th Cir. 1986) (racial and religious slurs uttered by jury members). For all that appears, the hold-out juror came to a firm conviction based on the evidence at trial and refused to budge. What were "ideological beliefs" to the foreman may be "personal values" to the hold-out. At most Thorpe might have been entitled to a voir dire inquiry; none was sought; and the situation certainly did not require the trial judge to order one *sua sponte.*

■ Lastly, Thorpe challenges the district court's entry of judgment for Mutual of Omaha on the claim of intentional infliction of emotional distress. In directing judgment on this count, the trial court properly excluded from consideration testimony on the subject of "car ramming," as this issue was resolved by the jury in favor of Mutual of Omaha. Still, Thorpe contends that the remaining evidence elicited at trial was sufficient to submit to the jury his claim for intentional infliction of emotional distress.

■ Thorpe first points out that a different judge had earlier denied Mutual of Omaha's motion for summary judgment on this claim, suggesting "reasonable minds could differ" and the jury should therefore decide the matter. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). A denial of summary judgment does not preclude a directed verdict on the same claim. *See, e.g., see Voutour v. Vitale* 761 F.2d 812, 822–23 (1st Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Evidence adduced at trial will almost always differ in degree, force, and quantity from that submitted on a motion for summary judgment. The earlier denial of summary judgment standing alone in no way impeaches the later directed verdict.

■ Turning to the evidence at trial, we note first that a plaintiff claiming intentional infliction of émotional distress under Massachusetts law must establish that the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; that the conduct was "extreme and outrageous," "was beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" that the actions were the cause of the plaintiff's distress; and that the emotional distress sustained by the plaintiff was "severe" and of a nature that no reasonable person "could be expected to endure." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315, 318–19 (1976). In our view, the surveillance did not even arguably rise to the level of "extreme and outrageous conduct," and the issue was properly withdrawn from the jury.[3] Once the claims of attempted car ramming are removed from dispute, the behavior complained of amounts to not much more than an insurance company's efforts to determine the activities of a claimant whose receipt of benefits was conditioned on his total disability. Investigations of this sort are commonplace and to be expected where disability claims are involved, particularly where, as here, the claimant was from all outward appearances often away from home during the day. However distasteful the notion of surveillance, Mutual of Omaha's conduct in relation to Thorpe was not

---

**3.** Although the issue is one which a jury is well suited to decide, the judge is still expected to apply the traditional test—could a reasonable jury find the conduct to violate the tort standard—in deciding whether to submit the issue to the jury. *See Boyle v. Wenk*, 378 Mass. 592, 598 & n. 11, 392 N.E.2d 1053, 1057 & n. 11 (1979) (citing *Restatement (Second) of Torts* § 46, comment h (1965)); *Agis*, 371 Mass. at 145–46, 355 N.E.2d at 319 (same). *See also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1021 (1st Cir.1988).

"extreme or outrageous" or "utterly intolerable in a civilized society."

*Affirmed.*