EDWIN S. VAN DYKE & another[1] *vs.* ST. PAUL FIRE AND
MARINE INSURANCE COMPANY.

Essex. October 7, 1982. — April 8, 1983.

Present: WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Unfair act or practice.
*Consumer Protection Act,* Insurance claim.

Summary judgment was appropriately entered for the defendant insur-
ance company in an action against it under G. L. c. 93A, § 9, by
plaintiffs who had a medical malpractice claim against certain physi-
cians insured by the company and who alleged injury from unfair
claims settlement practices by the company where, although factual
issues appeared as to whether the company had fulfilled requirements
of G. L. c. 176D, § 3 (9) (*d*) and (*f*), that it investigate claims and "ef-
fectuate prompt, fair, and equitable settlements" thereof, it neverthe-
less was established that the plaintiffs could not have been adversely
affected by any of the company's acts or omissions in this regard, since
the company's uncontradicted affidavit set forth its receipt, after com-
mencement of the c. 93A action, of independent professional advice
showing a reasonable prospect of success at trial on the malpractice
claim which, had this advice been in the company's possession at the
time of the plaintiffs' demands for settlement, would have justified its
handling thereof. [673-678]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 2, 1981.

The case was heard by *Bennett,* J., on a motion for sum-
mary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Jan Richard Schlichtmann* (*Kevin P. Conway* with him)
for the plaintiffs.

*Jacob J. Locke* (*Lionel H. Perlo* with him) for the defend-
ants.

---

[1] Kathleen Van Dyke, his wife.

WILKINS, J.  In our opinion issued today in *Van Dyke* v. *Bixby, ante* 663 (1983), we upheld judgments awarding damages to the Van Dykes, the plaintiffs in that action and in this one.  The *Bixby* case, which we shall call the underlying action, involved the liability of the defendant physicians for a deceased associate's alleged negligence in the treatment of the plaintiff, Edwin S. Van Dyke.  In this action, the Van Dykes seek to recover damages under G. L. c. 93A, § 9, for alleged unfair claim settlement practices of the defendant insurer (St. Paul).  The Van Dykes claim that St. Paul, as the defendants' insurer in the underlying action, did not adequately investigate their claims before rejecting their pretrial demand for settlement and that St. Paul had an obligation to make a reasonable pretrial offer of settlement because liability was reasonably clear.

A judge of the Superior Court granted summary judgment for St. Paul.  We affirm the judgment because, although St. Paul did not establish by affidavit or otherwise that there was no material fact in dispute concerning the propriety of its claim settlement practices as to the Van Dykes, the Van Dykes were not adversely affected by any acts or omissions of St. Paul that may have been unlawful methods, acts, or practices under G. L. c. 93A, § 9.

In January, 1980, the Van Dykes commenced the underlying action.  In February, 1981, their attorney made a request through defense counsel for settlement of their claims for approximately $400,000, stating in detail the circumstances on which the Van Dykes then relied in asserting liability and damages.  Apparently St. Paul made no written response to this request.  On May 27, 1981, the Van Dykes' counsel sent a letter of demand under G. L. c. 93A, § 9, to St. Paul's claims-loss supervisor in Boston, to which was attached the settlement request and associated material sent earlier to defense counsel.

In the letter of demand under G. L. c. 93A, § 9, the Van Dykes' counsel pointed out that St. Paul insured the defendants in the underlying action with a partnership policy providing $1,000,000 in coverage.  The Van Dykes renewed

their earlier request for settlement and asserted that St. Paul's failure to make "a fair, prompt, and reasonable settlement constituted an unfair claims settlement practice under [G. L. c. 93A and G. L. c. 176D, § 3 (9)]."

On June 15, 1981, St. Paul's claims-loss supervisor answered the Van Dykes' letter of demand. He stated St. Paul's opinion that G. L. c. 93A was "wholly inapplicable to the above matter, at least in its present status." He added that "[i]n our view, based upon the information obtained to date, there is a reasonable likelihood that a jury would return a verdict in favor of the defendants at trial." He declined "at present to extend an offer of settlement."

The complaint in this G. L. c. 93A action was filed on September 2, 1981. In February, 1982, after the jury verdict for the Van Dykes in the underlying action, St. Paul moved for summary judgment. That motion, as amended, relied on the provision in its policy allegedly precluding it from settling claims without the insured doctors' consent. St. Paul further alleged that liability in the underlying action was not "reasonably clear" and thus it did not have to make a settlement offer. St. Paul advanced two other claims: that the plaintiffs lacked standing under G. L. c. 93A and that the action was premature. In support of its motion for summary judgment, St. Paul submitted an affidavit of its claims-loss supervisor and of its trial counsel in the underlying action.

The claims-loss supervisor's affidavit stated that St. Paul had retained (at some time not set forth) a former chief of surgery at the Lahey Clinic Medical Center to advise it concerning the care and treatment rendered to Van Dyke by Dr. Alt, the deceased physician who was allegedly the partner of the defendants in the underlying action. St. Paul's expert advised it that Dr. Alt's treatment of Van Dyke "was in accordance with accepted medical practice." The claims-loss supervisor's affidavit referred to an annexed August 27, 1981, letter from the defendants in the underlying action, declining to authorize any settlement of that action. St. Paul asserted that it was obliged to reject the G. L. c. 93A

demand because of the position taken by its insureds. The claims-loss supervisor's affidavit further referred to the pretrial advice of the insureds' experienced trial counsel in the underlying action that there was a reasonable likelihood that St. Paul would prevail at trial. The affidavit did not, however, state when St. Paul received that advice.

The affidavit of counsel for the defendants in the underlying action indicated that the trial of that action in December, 1981, resulted in judgments in favor of the Van Dykes totaling $375,000 plus interest. He stated that the defendants' expert physician testified that Dr. Alt's treatment of Van Dyke was in accordance with accepted medical practice. He added that, in his view, the evidence was inadequate to support the finding that the defendants in the underlying action were responsible on the basis of partnership law for the acts or omissions of Dr. Alt. He also stated that the defendants had filed motions for judgment notwithstanding the verdict and for a new trial and that they would appeal if necessary.[2] We turn then to whether the judge properly allowed St. Paul's motion for summary judgment on the Van Dykes' claim that St. Paul's handling of the pretrial demands for settlement violated G. L. c. 93A, § 9.[3]

In *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72 (1977), a class action under G. L. c. 93A, § 9, as amended

---

[2] The Van Dykes filed a countermotion for summary judgment. In an affidavit, their counsel stated that he first learned on October 16, 1981, that St. Paul had retained a medical expert to testify in the underlying action.

[3] The Van Dykes made a second G. L. c. 93A demand after the trial of the underlying action, which St. Paul rejected by a letter dated January 26, 1982. We assume, without deciding, that such a demand could properly be part of this case without an amendment of the complaint. We have considered the affidavits and supporting materials. They do not demonstrate any disputed material fact concerning St. Paul's posttrial violation of any obligation imposed on it by G. L. c. 93A, § 9. St. Paul was warranted in declining to settle the Van Dykes' claim and in pursuing its appeal.

Even if there was a disputed material fact concerning St. Paul's posttrial conduct, thus requiring reversal of the summary judgment for St. Paul, we know from the record in *Van Dyke* v. *Bixby, supra,* that the Van Dykes would ultimately fail in this aspect of their claim. Issues on appeal in *Van Dyke* v. *Bixby* were substantial, and liability was not reasonably clear.

through St. 1973, c. 939, the plaintiffs claimed that the defendant employed unfair and deceptive settlement practices in handling no-fault insurance claims. We noted that only an insurance company's policyholder could assert a G. L. c. 93A violation against it for improper claim settlement practices. *Id.* at 81-82. After our *Dodd* opinion, the Legislature amended G. L. c. 93A, § 9 (1), by St. 1979, c. 406, § 1, to provide that "[a]ny person, other than a person entitled to bring action under [G. L. c. 93A, § 11], who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . or any person whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9)] may bring an action . . . ." This 1979 amendment substantially broadened the class of persons who could maintain actions under G. L. c. 93A, § 9. The plaintiffs, therefore, are entitled to relief under G. L. c. 93A, § 9, if they were injured by any method, act, or practice of St. Paul that was unlawful under G. L. c. 93A, § 2, or if their rights were affected by St. Paul's violation of G. L. c. 176D, § 3 (9).

The plaintiffs focus on the claim that St. Paul violated G. L. c. 176D, § 3 (9). They make no specific argument that St. Paul engaged in an unfair or deceptive act or practice made unlawful under G. L. c. 93A, § 2. We thus turn to the provisions of G. L. c. 176D. Section 3 defines "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance" to include "[u]nfair claim settlement practices." G. L. c. 176D, § 3 (9). "[A]n unfair claim settlement practice" may be one of a number of acts or omissions. *Id.* The plaintiffs rely on three of the acts or omissions enumerated in § 3 (9): "(*d*) Refusing to pay claims without conducting a reasonable investigation based upon all available information"; "(*f*) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; and "(*n*) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim . . . ."

The language quoted above from § 3 (9) (*d*) and (*f*) refers to multiple refusals or failures, not to a single act.[4] It may be that a person whose rights were adversely affected by an insurance company's violation of § 3 (9) (*d*) or (*f*) must be affected by a pattern of unfair claim settlement practices and not by an isolated act. St. Paul does not argue this point in its brief.[5] We shall proceed on the assumption that a single act in the handling of a claim constitutes a violation of G. L. c. 93A, § 9, if it is an act that as part of a pattern of conduct would be a violation of G. L. c. 176D, § 3 (9) (*d*) or (*f*).[6]

The question under clause (*d*) is whether St. Paul refused to pay the claim without conducting a reasonable investigation based on all available information. The G. L. c. 93A demand letter was sent on May 27, 1981, and St. Paul rejected the claim by a letter dated June 15, 1981. From

---

[4] Clause (*n*), however, refers to a single instance of failing to give a reasonable explanation of the basis in the insurance policy for denying a claim. Lack of coverage or limited coverage could be a ground for such a denial. See *Higgenbottom* v. *Aetna Casualty & Sur. Co.*, 12 Mass. App. Ct. 927 (1981). In the case before us, St. Paul gave a reasonably prompt response stating the basis in the insurance policy for denying the claim — the absence of any reasonably clear liability of the insured's physicians. The facts show that St. Paul did not violate clause (*n*).

[5] In *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723 (1979), the Appeals Court discussed a policyholder's claim under G. L. c. 93A, prior to its 1979 amendment, as if a single violation of G. L. c. 176D, § 3 (9) (*f*), could be action made unlawful under G. L. c. 93A, § 2 (*a*).

[6] We need not reach St. Paul's claim that under the professional liability policy issued to the defendant physicians in the underlying action St. Paul had no right to settle the claim because it agreed that it "shall make no settlement of a claim or suit covered by [the policy] without the written consent of the Insured." In August, 1981, the defendant physicians stated in a letter that they wished to contest the action vigorously. The letter was sent after St. Paul rejected the G. L. c. 93A demand. St. Paul's response to the demand made no reference to this provision in the policy and arguably should have, if St. Paul was relying on it in denying the claim. See G. L. c. 176D, § 3 (9) (*n*). The policy was, of course, issued long before the 1979 amendment of G. L. c. 93A, § 9. It may be that an insurer may not rely conclusively on such policy language in the face of obligations expressed in G. L. c. 93A, § 2, and G. L. c. 176D, § 3 (9). See *Transit Casualty Co.* v. *Spink Corp.*, 94 Cal. App. 3d 124, 135-136 (1979).

St. Paul's affidavits we do not know what investigation it had conducted by June 15, 1981, or what reasonable investigation could have been conducted by that date. One may infer that St. Paul had had sufficient time to conduct a full investigation because the underlying malpractice action had been commenced on January 25, 1980. St. Paul's affidavits failed to show that there was no material fact in dispute concerning the reasonableness of its claims investigation prior to its denial of the claim. Thus, summary judgment for St. Paul cannot be supported on the ground that it was undisputed that it had conducted a reasonable investigation before denying the claim.

The question under clause (*f*) is whether St. Paul failed to make a prompt, fair, and equitable settlement offer when liability became reasonably clear. St. Paul rejected the G. L. c. 93A demand on June 15, 1981. We do not know from its affidavits what it knew on that date to warrant the stated conclusion that there was "a reasonable likelihood that a jury would return a verdict in favor of the defendants at trial." It may be that at that time liability was not reasonably clear, but St. Paul did not so demonstrate in support of its motion for summary judgment.[7]

Nevertheless, we do know from St. Paul's uncontroverted affidavits that, after the G. L. c. 93A complaint was filed in this action, St. Paul received independent advice from an expert witness and trial counsel, involved in the underlying action, that indicated that liability was not reasonably clear. This advice suggested a reasonable prospect of success at trial, and, if that advice had been in St. Paul's possession when it rejected the plaintiffs' G. L. c. 93A demand, the refusal to settle would not have violated G. L. c. 176D, § 3 (9) (*d*) or (*f*). Liability would not have been reasonably clear.[8]

_____

[7] St. Paul's further ground for denying the G. L. c. 93A claim — "G. L. C. 93A is wholly inapplicable to the above matter" — is wrong as a matter of law, as our earlier discussion of the 1979 amendment of § 9 of G. L. c. 93A shows.

[8] We are in the peculiar position of having an opportunity to assess the reasonableness of the judgments of the physician and attorney expressed

Summary judgment was properly entered for St. Paul. Even if St. Paul violated G. L. c. 176D, § 3 (9) (*d*) and (*f*), the plaintiffs had to be adversely affected by that violation in order to be entitled to recover under G. L. c. 93A, § 9. If St. Paul did not have adequate information to reject the G. L. c. 93A demand when it did, it ran the risk that subsequent events would not support its assertion that its insureds had a reasonable defense. Here, however, the affidavits filed in connection with St. Paul's motion for summary judgment show that the plaintiffs were not adversely affected by the refusal of the G. L. c. 93A demand. If St. Paul had conducted a proper investigation before rejecting that demand (as it may have, but the affidavits do not show it did), liability would not have been reasonably clear and St. Paul would have been warranted in rejecting the demand. Thus, any omission by St. Paul to comply with G. L. c. 176D, § 3 (9), did not cause any injury to or adversely affect the plaintiffs. The plaintiffs, therefore, have no claim under G. L. c. 93A, § 9.

*Judgment affirmed.*

---

in their affidavits. In *Van Dyke* v. *Bixby, supra,* there was a substantial question, both at trial and on appeal, whether the defendant doctors were liable for the consequences of any negligent act committed in 1959 and whether there was any negligence of Dr. Alt in 1969 for which they would be liable. The doctors would not have been liable if Dr. Alt's only negligence occurred in 1970, after the partnership was terminated. The plaintiffs may have had a case for the jury to consider, but St. Paul's medical and legal advisors were well warranted in their advice.