Toomey, J.
INTRODUCTION
In early 1991, plaintiff/defendant-in-counterclaim (Granger) subcontracted with defendant/plaintiff-incoun ter claim (J&S) to provide certain fireproofing services that Granger had contracted to perform for the Massachusetts Port Authority. J&S commenced work in accordance with its subcontract, but Granger became dissatisfied with J&S’s performance and terminated the subcontract with J&S on or about August 28, 1991. J&S calculated that, as of the termination, Granger owed it in excess of $200,000.00 in connection with the “time and materials" subcontract.
Granger brought suit against J&S on May 7, 1992, alleging that J&S had delayed in the performance of its contractual obligations, had provided defective work and had submitted over-billings, all to the damage of Granger in excess of $500,000.00. J&S counterclaimed against Granger seeking recovery of the *423 more than $200,000.00 allegedly owed it by Granger (Counts I and II) and asserting a cause of action against Granger under G.L.c. 93A (Count III). The counterclaim also sought relief against Granger’s surety, United States Fidelity and Guaranty Co. (USF&G), under its G.L.c. 149, §29 bond (Count IV).
The matter was tried to a jury[1] and, on October 26, 1994, the jury returned verdicts for J&S on Granger’s claim and for J&S on J&S’s counterclaim, assessing damages against Granger in the amount of $203,867.31. On September 6, 1995, an order for separate judgment was entered upon Granger’s claims and upon J&S’s counterclaims resolved by the juiy’s verdicts (Counts I and II), by the court (Count IV) and by the court’s August 1, 1995, assessment of fees and costs:
Against Granger, upon Counts I and II of J&S’s counterclaim, in the amount of $307,527.31 (including $95,477.94 in pre-judgment interests and $8,182.06 in post-judgment interest)
Against USF&G (on its G.L.c. 149, §29 bond), upon Count IV of J&S’s counterclaim, in the amount of $410,245.83 (including $79,100.62 in pre-judgment interest, $7,734.40 in post-judgment interest, and $119,543.50 in attorneys fees).
Neither judgment included an award of costs. Executions issued for the appropriate amounts on October 23, 1995.
The remaining disputes, to wit, J&S’s G.L.c. 93A counterclaim against Granger (Count III) and J&S’s G.L.c. 93A claim against USF&G (Count V), were presented for bench trial on November 30, 1998. Counsel agreed that no witnesses were to be offered and that evidentiary matters received during the 1994 trial would, to the extent that they were material to the instant determination, be considered by the court. Additionally, certain documentary materials, viz “Tabs” 4, 5, 6, 7, 8 and 9 of J&S’s November 30, 1998, submissions, were accepted into evidence for purposes of the G.L.c. 93A trial. Based upon the evidence thus adduced, oral arguments of counsel and their post-trial memoranda, I conclude as follows.
DISCUSSION
I. The G.L.c. 93A Case Against Granger (Counterclaim Count III)
Granger’s suit for breach of the subcontract claimed that J&S’s delay in performance, defective work and over-billing justified Granger’s withholding of payment to J&S and, indeed, had caused damage to Granger in the amount of $500,000.00. J&S, however, maintains that Granger well knew that its refusal to pay the approximately $200,000.00 it owed J&S was based on illegitimate reasons and asserts that Granger’s suit against J&S for breach of the subcontract was a continuation of Granger’s mission to avoid paying its lawful debt to J&S. Thus, the gravamen of J&S’s instant G.L.c. 93A contention is that Granger engaged in “unfair or deceptive acts or practices” when it withheld payment and pressed a lawsuit grounded on the apocryphal tri-foundations of J&S’s delay, defective work and over-billing. G.L.c. 93A, §2, 11.
General Laws c. 93A, §2(a) makes unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” Thus, the threshold for G.L.c. 93A relief is a showing by J&S that Granger’s conduct constituted “unfair or deceptive acts or practices” in a commercial context. While this court concurs that Granger’s accusations of delay, defective work and over-billing were indeed unwarranted,[2] that determination does not end the G.L.c. 93A analysis. It is not enough for J&S to demonstrate, as it did, that Granger breached its subcontract, inexcusably withheld payment or unjustifiably brought suit against J&S. See Knapp Shoes Inc. v. Sylvania Show Mfg. Co., 418 Mass. 737 (1994). Censurable as that conduct undoubtedly was, such conduct between businesses does not rise to the level of a G.L.c. 93A, §11 violation unless it also constitutes “immoral, unethical, oppressive or unscrupulous” activity, PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), or “attains a level of rascality that would raise the eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes and Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). A willful breach of contract is, of course, fully actionable at common law, but the G.L.c. 93A statutory remedy of multiple damages and attorneys’ fees will not be engaged absent “an extortionate quality that gives [the breach] the rancid flavor of unfairness.” Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992).
Application of those principles of law to Granger’s conduct at bar — viz withholding payment and bringing suit for spurious reasons — results in the conclusion that, in the circumstances, Granger’s conduct did not rise to the level condemned by G.L.c. 93A, §§2 and 11. The on-site turbulence generated by the extent of the project was aggravated by the misfeasances of J&S’s two predecessor subcontractors and intensified by the various deadlines under which both Granger and J&S labored. While not excusing Granger’s breach, those circumstances render discordant the conclusion that Granger’s conduct was “immoral,” “extortionate,” or “rancid.” “Rascality” was not demonstrated.
Concededly, Granger had back-charged other contractors for previous obligations, and there was thus no justification for Granger’s attempt also to lay those charges at J&S’s doorstep. In addition, Granger’s filing of certain pleadings in other lawsuits was inconsistent with Granger’s submissions in the case at bar. Such misconduct suggests Granger’s culpable carelessness in coordinating its institutional position in the several concurrent litigations in which it was then involved. But neither transgression bespeaks a callousness or commercial wrongdoing deserving of G.L.c. 93A’s *424 rather nuclear response. Cf. Levings, supra, at 501 (labeling G.L.c. 93A’s remedies as “potent weaponry”).
In sum, the evidence does not persuade this court, by a fair preponderance, that Granger’s aberrancies reached the statutory mark of “unfair or deceptive acts or practices” in a commercial setting. Surely, Granger did not meet the expectations of the law or of society in the manner in which it conducted its business with J&S, but Granger’s failure was not of a sort that would merit the characterization reserved by G.L.c. 93A for more egregious offenders.[3] There being no “unfair or deceptive acts or practices” in Granger’s sorry performance of its contractual obligations to J&S, the latter must be content with its common law remedy. Judgment shall, therefore, issue for Granger upon Count III of J&S’s counterclaim.
II. The G.L.c. 93A and G.L.c. 176D Case Against USF&G (Counterclaim Count V)
J&S’s G.L.c. 93A case against USF&G is on far firmer footing than was its cognate thrust against Granger. The acts and practices of USF&G were indeed unfair and deceptive within G.L.c. 93A, §§2 and 11 as those terms have been defined by precedent. See cases cited, supra. Accordingly, J&S will prevail on its statutory counterclaim targeting USF&G.
We begin by noting that USF&G will be held liable under G.L.c. 93A only for those acts and practices which occurred subsequent to the jury’s verdict in favor of J&S on the common law counts of the counterclaim. While USF&G’s conduct prior to the verdict may be pertinent to divining its corporate state of mind throughout the entirety of its dealings with J&S, only its acts or practices after the return of the verdict against Granger may constitute remediable violations of G.L.c. 93A.[4] Those doings are manifestly violative of G.L.c. 93A.
On October 26, 1994, the jury returned its verdict in the amount of $203,867.31 in favor of J&S. By letter dated November 2, 1994, and received by counsel for USF&G on November 3, 1994, J&S demanded that USF&G pay the judgment “consistent with the jury’s verdict together with interest.” Not until March 15, 1995 did USF&G respond to the demand, and its response was an offer to settle (expressly conveyed under USF&G’s G.L.c. 93A, §11 obligations) in the amount of $230,000.00. Not only was USF&G’s offer inexplicably tardy (there being no evidence explaining the more than four month delay between demand and response), but, given the verdict, the likely pre- and post-judgment interest calculations, and the attorneys fees reasonably expected to be awarded, the offer was wholly inadequate.[5] In fact, with interest and attorneys fees, the judgment entered by the clerk against USF&G on September 6, 1995 was for $410,245.83.
The circumstances of the offer to settle are in lockstep with USF&G’s cavalier attitude toward its obligations as payment bond surely. G.L.c. 176D, §3(9)(d) required USF&G to conduct a reasonable investigation of the merits of Granger’s refusal to pay its alleged debt to J&S.[6] As demonstrated by USF&G’s May 5, 1992 letter to J&S, however, USF&G was content to abandon the field to Granger and J&S. Similarly, USF&G’s December 12, 1994 letter to J&S indicates that USF&G engaged in only a perfunctory inquiry of Granger’s liability to J&S. USF&G thus did not satisfy its §3(9) (d) obligation reasonably to investigate its principal’s liability to the claimant. See also, G.L.c. 176D, §3(9)(e) and its imposition of a duty to affirm or deny coverage, a duty ignored in USF&G’s May 5, 1992 letter to J&S. The evidence of pre-verdict omissions by USF&G is probative of USF&G’s post-verdict lack of diligence in like circumstances. No evidence to the contrary was adduced at the G.L.c. 93A trial.
G.L.c. 176D, §3(9)(f) required USF&G to “effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.” Its liability was “reasonably clear” after the verdict, yet USF&G’s response to J&S’s post-verdict demand was four months in coming and monetarily unrealistic. USF&G thus did not satisfy its §3(9) (f) obligation post-verdict.
Furthermore, G.L.c. 176D, §3(9)(g) required USF&G to eschew “compelling insureds to initiate litigation to recover amounts due ... by offering substantially less than the amounts ultimately recovered ..." By reason of its failure to present an offer to settle in response to the November 2, 1994 demand, USF&G compelled J&S to commence the instant G.L.c. 93A action on February 21, 1995. Furthermore, the monetarily inadequate offer by USF&G on March 15, 1995, necessitated the continued pursuit of G.L.c. 93A relief by J&S. USF&G thus did not satisfy its §3(9)(g) obligation. Ricardo Guity v. Commerce, 36 Mass.App.Ct. 339 (1994).
These violations of G.L.c. 176D are persuasive evidence that USF&G engaged in “unfairness under Chapter 93A.” Brown Daltas and Associates v. Gen. Accordingly Ins. Co., 844 F.Supp. 58, 67 (D.Mass. 1994), rev’d on other grounds 48 F.3d 30 (1st Cir., 1995); Van Dyke v. St Paul Fire and Marine Insurance, 388 Mass. 671, 676 (1983) (violation of G.L.c. 176D, §3(9) warrants G.L.c. 93A relief). USF&G’s conduct compelled J&S to re-commence litigation in February, 1995, an injury cognizable under G.L.c. 93A. International Fidelity Insurance Company v. Wilson, 387 Mass. 841 (1983); Heller v. Silverbranch, 376 Mass. 627 (1978). USF&G’s March 9, 1995 Answer to J&S’s G.L.c.93A counterclaim was, in view of the matters previously resolved by the verdict and otherwise, an insincere response calculated solely to avoid the inevitable day of reckoning. Such conduct is remediable under G.L.c. 93A. Id. USF&G’s presentation of a manifestly inadequate offer of settlement on March 15, 1995 is punishable under G.L.c. 93A. Pepsi Cola *425 Metropolitan Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10 (1st Cir. 1985). The totality of USF&G’s post-verdict conduct, as demonstrated by a fair preponderance of the credible evidence, depicts willful or knowing unfair and deceptive acts and practices by USF&G in violation of G.L.c. 93A.
Having thus found that USF&G acted, post-verdict, willfully or knowingly in a manner prohibited by G.L.c. 93A, §2, but having assayed USF&G’s degree of culpability as not meriting a judicial response in the full measure of firepower available under G.L.c. 93A, this court concludes that a full and fair disposition of Counterclaim Count V may be had by awarding J&S double its damages (as determined by the juiy’s October 26, 1994 verdict), interest (on the nonpunitive portion of the damages awarded hereby and calculated from February 21, 1995, the date of commencement of the G.L.c. 93A action by Count V, to August 25, 1995, the date J&S rejected USF&G’s proffered payment), and reasonable attorneys’ fees and costs incurred by J&S in connection with its prosecution of Count V.
CONCLUSION
A. Judgment is to issue for Granger upon Count III of the Counterclaim.
B. Judgment is to issue for J&S upon Count V of the Counterclaim in a manner consistent with the determinations recorded supra.

J&S’s G.L.c. 93A counterclaim against Granger (Count III) was reserved by the trial judge. So too, J&S’s counterclaim against USF&G (Count V), which alleged a G.L.c. 93A cause of action and which was activated by a post-verdict order of the court, was reserved by the trial judge. The counterclaim seeking recovery on the G.L.c. 149, §29 bond (Count IV) was similarly reserved.

This court is aware that it is not, for G.L.c. 93Apurposes, wedded to the jury’s verdict and the verdict’s necessary rejection of Granger’s characterization of J&S’s performance as violative of the sub-contract. Nevertheless, the court, on its own assessment of the trial evidence, concurs with the jury’s determination that Granger’s asserted justifications for its withholding payment were misbegotten. See, generally, Wyler v. Bonnell Motors, Inc., 35 Mass.App.Ct. 563 (1994).

 Note should also be taken that Granger did deliver to J&S $434,393.57 in “progress payments” during J&S’s performance pursuant to the subcontract. While those payments do not minimize Granger’s dereliction in not paying the approximately $200,000.00 also due J&S, the payments do demonstrate an effort by Granger, albeit inadequate, to compensate J&S.

 This court’s order of Februaiy 21, 1995 recognized that J&S had not brought suit against USF&G under G.L.c. 93A in its original complaint and that to permit J&S to amend, post-verdict, in order to allege pre-verdict G.L.c. 93A violations by USF&G would be unfair. Accordingly, the Februaiy 21, 1995 order permitted an amendment of the complaint to allege G.L.c. 93A misconduct by USF&G only insofar as said misconduct occurred post-verdict.

No appeal or other challenge to the verdict was then pending and USF&G may not reasonably justify the quantum of its settlement “offer” on the grounds that it would, by settlement, surrender an opportunity to challenge the verdict.

The provisions of G.L.c. 176D, more commonly invoked against insurers, are nonetheless also applicable to such payment bond sureties as USF&G. See G.L.c. 176D, § 1 (c).