GARY H. LANTNER & another *vs.* JOHN CARSON & another.

Essex. December 8, 1977. — March 10, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Consumer Protection Act. Words,* "Trade," "Commerce."

The remedial provisions of G. L. c. 93A were not available against defendants who as private individuals sold the plaintiffs their home where the transaction was strictly private in nature and in no way undertaken in the ordinary course of a trade or business. [609]

CIVIL ACTION commenced in the Superior Court on March 4, 1977.

A motion to dismiss was heard by *O'Connor,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael A. Gerstein* for the plaintiffs.

*Albert Conlon* (*Thomas Valkevich* with him) for the defendants.

HENNESSEY, C.J.   In March, 1977, the plaintiffs commenced an action under G. L. c. 93A, inserted by St. 1967, c. 813, § 1, commonly known as the Consumer Protection Act, against the defendants who as private individuals sold them their home. The complaint sought treble damages, attorneys' fees, and other relief in connection with the repair of several defects discovered by the plaintiffs after they took occupancy.

The defendants filed a motion to dismiss the complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), which motion was allowed. Judgment was entered accordingly, and the case was dismissed. Thereafter, the plaintiffs appealed, asserting that the remedial provisions of G. L. c. 93A apply, even where the consumer transaction at issue is the isolated sale of a private home.[1] We granted direct appellate review.

It is well established that in proscribing "unfair or deceptive acts or practices in the conduct of any trade or commerce" (G. L. c. 93A, § 2) the consumer protection statute reaches "[a] wide range of activities," *Commonwealth* v. *DeCotis*, 366 Mass. 234, 239 (1974), including the "sale . . . of any . . . property, . . . real, personal or mixed." G. L. c. 93A, § 1 (*b*). We conclude, however, that as broadly and expansively as the statute applies to the regulation of

---

[1] The plaintiffs took two additional actions after the dismissal of their 93A claims. First, the plaintiffs unsuccessfully sought an order vacating the Superior Court judgment. Second, the plaintiffs filed another suit against the defendants, alleging fraudulent misrepresentation, breach of contract, and breach of warranty in connection with the sale of their home. *Lantner* v. *Carson*, Superior Court, Essex County, No. 8092 (1977). In this second suit, the defendants' motion to dismiss under Mass. R. Civ. P. 12 (b) (9), 365 Mass. 754 (1974) (pendency of a prior action in a court of the Commonwealth) was denied without prejudice.

business practices, see *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975), G. L. c. 93A is not available where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business. Accordingly, we affirm the dismissal of the plaintiffs' complaint.

For the purposes of our ruling on the motion to dismiss, we accept as true the factual allegations in the complaint. *Slaney* v. *Westwood Auto, Inc., supra* at 690. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High School Bldg. Comm.,* 345 Mass. 267, 269 (1962). *Shea* v. *Shea,* 296 Mass. 143, 144 (1936). They are as follows. Under an agreement dated April 12, 1976, the plaintiffs agreed to buy and the defendants agreed to sell the premises at 48 Georgetown Road, Boxford, which property was the private residence of the defendants. The purchase and sale agreement, drawn by Wini McDuff as the broker,[2] provided in part that: "This agreement is made . . . subject to the following: Water turned on, well functional, and water quality tests acceptable." Prior to this written agreement, the defendants had made other representations, namely that (1) the evident damage to second floor ceilings was a result of a defective roof which had since been repaired; and that (2) the second floor fireplace was stuffed with paper to avoid drafts, but was otherwise in complete working order.

The sale was consummated on or about May 19, 1976. The plaintiffs took occupancy on June 8, 1976. Almost immediately thereafter, difficulties developed.

First, on June 10, 1976, the water pump failed. Inspection and repair work revealed that the plaintiffs had been informed incorrectly as to the type of well on the property, and that its pump apparatus was inadequate and defective.

Second, in August, 1976, the well almost ran dry. During that time, the plaintiffs experienced several problems,

---

[2] We observe that the real estate broker was not made a party to this case.

including lack of water. As a result the pipes sucked in sand. A professional investigation disclosed that the functioning of the well was "marginal."

Third, in December, 1976, the plaintiffs replastered the damaged second floor ceilings. After several snowfalls it became apparent that, contrary to the defendants' representations, the roofing leaks which caused the original damage had not been repaired. As a result, water penetrated both the second and first floors.

Finally, after contracting for the cleaning of the second floor fireplace, the plaintiffs discovered that the fireplace was not merely "stuffed with paper to avoid drafts," but in fact was partially reconstructed from newspaper "bricks." The newspaper had been covered with a one-eighth inch coat of plaster and painted black.

The plaintiffs repaired these defects. On January 17, and February 10, 1977, in compliance with G. L. c. 93A, § 9 (3),[3] the plaintiffs sent to the defendants a written demand for relief. Having received no tender of settlement from the defendants within thirty days of the demand, the plaintiffs commenced the instant action.

1. For the purpose of our subsequent analysis, it is useful at this time to review briefly the applicable sections of G. L. c. 93A. Through § 9 (1), as amended through St. 1971, c. 241, G. L. c. 93A provides a private right of action to "[a]ny person who purchases . . . property . . . primarily for personal, family or household purposes and thereby suffers any loss of money or property . . . as a result of the use . . . by another person of an unfair or deceptive act or practice declared unlawful by section two." Section 2 proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce," and § 1 states that "trade" and "com-

---

[3] General Laws c. 93A, § 9 (3), inserted by St. 1969, c. 690, provides, in pertinent part, "At least thirty days prior to the filing of any . . . action [under this section], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

merce" shall include "the advertising, the offering for sale, . . . [or] sale . . . of any . . . property . . . real, personal, or mixed."

The plaintiffs argue that the terms of §§ 1 and 2 are broad enough to reach *any* type of commercial exchange, regardless of the nature of the transaction or the character of the parties involved. According to the plaintiffs, the Legislature made no distinction in the statute between the professional salesperson or business person, and the amateur, the individual who may sell a consumer item only on an isolated basis. Therefore, they argue, the remedial provisions of § 9 should be available to the consumer who purchases from an individual homeowner, regardless of the fact the transaction is not in pursuit of the seller's ordinary course of business. We do not agree with this expansive reading.

First, the statute does not specifically define the phrase "in the conduct of any trade or commerce."[4] Nevertheless, we may infer its meaning from reading the statute as a whole. Cf. *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 437-438 (1972). In so doing, we observe that, contrary to the plaintiffs' assertions, G. L. c. 93A creates a sharp distinction between a business person and an individual who participates in commercial transactions on a private, nonprofessional basis.

For example, where § 9 affords a private remedy to the individual consumer who suffers a loss as a result of the use of an unfair or deceptive act or practice, an entirely different section, § 11, extends the same remedy to "[a]ny person who engages in the conduct of any trade or commerce."[5]

---

[4] Section 1 is of minimal utility in construing this phrase. The statutory definition of "trade" or "commerce" in § 1 merely "recites certain activities which are included within those terms and concludes by incorporating . . .'any trade or commerce directly or indirectly affecting the people of this commonwealth.'" *Commonwealth* v. *DeCotis*, 366 Mass. 234, 239 (1974).

[5] Section 11, inserted by St. 1972, c. 614, § 2, provides, in pertinent part: "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in trade or commerce of an unfair . . .

In *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688 (1975), we concluded that by these terms, § 11 extends the consumer protection remedies of G. L. c. 93A to the "businessman." *Id.* at 695-697. Indeed, this construction is a necessary one. Were we to interpret the phrase "in the conduct of any trade or commerce" as the plaintiffs suggest, to apply to any commercial transaction whatsoever, the "persons" covered by §§ 9 and 11 would be identical. Section 11 would thus be superfluous — merely a repetition of § 9. We have stated that "[a]n intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). See *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974); *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967). Therefore, we conclude that with respect to G. L. c. 93A, where the Legislature employed the terms "persons engaged in the conduct of any trade or commerce," it intended to refer specifically to individuals acting in a business context.

These considerations are helpful in determining the meaning of § 2, which employs the phrase "in the conduct of any trade or commerce." Following the rule of statutory construction which suggests that words used in one place within a statute be given the same meaning when found in other parts of the statute, see *Commonwealth* v. *Mercy Hosp.*, 364 Mass. 515, 520 (1974); *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969); *Randall's Case*, 331 Mass. 383, 386 (1954); *Booma* v. *Bigelow-Sanford Carpet Co.*, 330 Mass. 79, 82 (1953), and cases cited, we conclude that the terms of § 2 must be construed similarly to those in § 11. Thus, the proscription in § 2 of "unfair or deceptive acts or practices in the conduct of any trade or commerce" must be read to apply to those acts or practices which are perpetrated in a business context.

---

or deceptive act or practice declared unlawful by section two . . . may . . . bring an action in the superior court . . . ."

Contrary to the plaintiffs' assertions, this conclusion is entirely consistent with *Slaney* v. *Westwood Auto, Inc., supra* at 693, where we described G. L. c. 93A as "a statute of broad impact" with "far-reaching effects." At the same time, however, we stated that the statute's private remedies "are available to the individual consumer . . . who suffers a loss . . . as a result of the employment of an unfair or deceptive act or practice by a *businessman*" (emphasis added). *Id.* at 695-696. Thus at no time did we intimate in *Slaney* that the remedial provisions of c. 93A were available to a consumer as against an individual, nonprofessional seller.

Finally, we note that our conclusions with respect to the scope of G. L. c. 93A are not inconsistent with the statute's broadly protective legislative purpose. In *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72 (1977), we stated that the basic policy of G. L. c. 93A was "to regulate business activities with the view to providing . . . a more equitable balance in the relationship of consumers to persons conducting business activities." *Id.* at 80, quoting from *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974). See *Slaney* v. *Westwood Auto, Inc., supra* at 696. An individual homeowner who decides to sell his residence stands in no better bargaining position than the individual consumer. Both parties have rights and liabilities established under common law principles of contract, tort, and property law. Thus, arming the "consumer" in this circumstance does not serve to equalize the positions of buyer and seller. Rather, it serves to give superior rights to only one of the parties, even though as nonprofessionals both stand on equal footing.

*Judgment affirmed.*