Cowin, J.
INTRODUCTION
This case is before the Court on Boris and Zhanna Voronovs’ (“the Voronovs”) motion for summary judgment. Plaintiffs, Terry Patinkin and Sandra Friedman Patinkin (“the Patinkins”), filed this action against the Voronovs from whom they bought a home located in Newton. Counts VII, VIII and X contain the only claims that the Patinkins have made against the Voronovs. These counts are claims for fraud and misrepresentation, breach of warranty and violation of G.L.c. 93A. For the following reasons, summary judgment is DENIED.
BACKGROUND
The uncontroverted evidence establishes the following facts. The Voronovs own and operate an insurance agency in Brookline. The Patinkins are both physicians. The Voronovs purchased property located at 361 Dudley Road, Newton, Massachusetts (“the Newton house”) initially intending to improve it and resell it for a profit. Because they could not find a buyer for the improved property, the Voronovs sold their home in Natick and moved into the Newton house in May 1990. There is no evidence that the Voronovs had ever bought or renovated other properties.[1]
*190 After living in the house for over one year, the Patinkins entered into a Purchase and Sale Agreement (“PSA”) on June 10, 1991 with the Voronovs for the Newton house. During the course of negotiations, the Patinkins questioned the Voronovs about specific items. In response to those inquiries, the Voronovs provided the Patinkins with a letter dated June 5, 1991, entitled “Warranties and Info needed” (“June 5, 1991 letter”). Before signing the PSA, the Patinkins also hired a home inspector, Zagata Associates. This inspector prepared a report itemizing problems with the property. This list of problems resulted in an Addendum to the PSA (“Addendum”).
Prior to the closing, another inspector, P. Chris Monahon (“Monahon”), was hired to determine whether the Voronovs had completed the repairs specified in the Addendum. Monahon reported that all the items had been upgraded in a workmanlike manner with three exceptions. Because of these exceptions, an Escrow Agreement was signed on the date of closing, July 16, 1991. This Agreement provided that the escrow agent, Century 21 Westwood Homes, would hold $1500 of the sale proceeds to cover the costs of the additional repairs.[2] The Voronovs never completed these repairs.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues as to any material fact and when the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I. Fraud and Misrepresentation Claims (Count VII)
The Purchase and Sale Agreement states:
25. The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE.
The Addendum incorporates only three specific representations regarding the condition of the property. The Voronovs argue that the language of section 25 precludes the Patinkins from relying on any representations of the Voronovs other than those three set forth in the Addendum. Case law in Massachusetts is to the contrary, however.
Massachusetts case law rejects the assertion of “as is” and like clauses as an automatic defense to allegations of fraud or deceit. “The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement.” Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 193 (1987), quoting from Bates v. Southgate, 308 Mass. 170, 182 (1941).
The Patinkins have submitted evidence that they relied upon representations of the Voronovs that were false and without which they would not have made this agreement. For example, the Voronovs wrote a letter to the Patinkins dated June 5, 1991, entitled “Warranties & Info needed.” In this letter, the Voronovs state that after water was discovered in the basement, Alltight Waterproofing, Inc. corrected the problem and provided a lifetime warranty. The affidavit of the president of Alltight Waterproofing, Inc., however, states that this company never provided a lifetime warranty to the Voronovs as the company never provides a lifetime warranty to any of its customers.
Additionally, in his affidavit, Eugene Kehoe, the former contractor for the Voronovs, states:
On numerous occasions during the three-month period and on each and every time it rained, there was a continual water problem in the basement. The Voronovs required that I put a coat of Finset which was not actually a waterproofing type of material. After applied the Finset, the Voronovs’ [sic] simply carpeted over the problem. I voiced my objections to this type of remedy and indicated that it was only trying to hide the problem and that, in fact, the entire perimeter of the house should be excavated to see what and where the water was coming from.
The Patinkins maintain that less than one month after the date of closing they discovered extensive water leakage in the basement.
There is evidence that the Voronovs specifically represented that the basement was leak proof, despite their actual knowledge of flooding and that they represented that the construction was completed in a good workmanlike manner. Evidence has also been submitted that the Voronovs made these statements knowing they were false; that the Patinkins relied on them and thereby were induced to enter into the transaction; and that the Voronovs fraudulently concealed from the Patinkins the problems they had encountered with the contractors who performed the improvements to the property. Thus, the Patinkins have presented sufficient evidence to establish fraud in the inducement of the PSA which would vitiate said agreement.
*191 The Voronovs contend that the Patinkins cannot recover for fraud and misrepresentation because the representations made by the Voronovs were only their opinions. A seller is “liable for representations known by him to be false” and for representations made in a negligent manner. Moran v. Levin, 318 Mass. 770, 773 (1945). When buyers ask specific questions about the condition of property, the sellers are bound to answer honestly. Solomon v. Birger, 19 Mass.App.Ct. 634,643 (1985) (citing Kannavos v. Annino, 356 Mass. 42, 48 (1969)).
The Voronovs also seek to avoid liability by denying that the June 5, 1991 letter containing warranties were their own “personal warranties.” There is evidence, however, that the Voronovs provided information to the Patinkins upon which the Voronovs knew the Patinkins would rely and that the Voronovs made these statements knowing they were false. The Voronovs further claim that they are not responsible for any fraud because the Patinkins hired two inspectors.[3] Even if the Voronovs’ assertions are taken to be true, this does not absolve the Voronovs of liability for making false representations with intent to deceive. See Yorke v. Taylor, 332 Mass. 368, 373 (1955) (defendant who willfully made false representations with intent to deceive is not relieved of liability because of victim’s lack of diligence); see also Kannavos v. Annino, supra at 48 (citing Boston Five Cents Sav. Bank v. Brooks, 309 Mass. 52, 55-56 (1941) (declarations and conduct calculated to mislead are enough to constitute fraud). The submitted materials indicate that on numerous occasions the Voronovs made statements discrediting the findings of the home inspector. In addition, the record indicates that the Voronovs made misrepresentations regarding certain corrective work. They erroneously claimed such work had been completed as required by the home inspection.
The Patinkins have set forth sufficient evidence to defeat the motion for summary judgment as to the fraud and misrepresentation claims.
II. Breach of Warranty (Count VIII)
In Count VIII, the Patinkins allege that:
On or about June 10, 1991 (the date of the execution of the PSA], the Defendants jointly and severally represented and warranted that the renovations and construction was performed in a good and workmanlike manner including, but not limited to, the painting, insulation, ventilation, and the lack of water leakage, and further warranted that the Property would be habitable.
The Patinkins also allege that the Voronovs warranted, in the Escrow Agreement, to complete certain repairs after the transfer of title. Further, the Complaint states that the Voronovs warranted that the flashing was not necessary, that the insulation was completed, that the additional toner and an additional coat of paint was put on the walls, and that the basement was free from flooding. According to the Patinkins, the Voronovs breached these warranties because the ventilation was not adequate, no lifetime warranty existed on the insulation and the work and renovations were not completed in a workmanlike manner.[4]
The summary judgment record reveals that there are genuine issues of material fact regarding these allegations that preclude summary judgment on this Count. The discussion in the prior section indicates that the Patinkins have presented a genuine issue of material fact regarding their breach of warranty claim. Accordingly, summary judgment is denied as to Count VIII.
III. Amount of Recovery
Paragraph 13 of the Purchase and Sale Agreement states that the Patinkins’ acceptance of the deed from the Voronovs:
shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be peiformed after the delivery of said deed. (Emphasis added.)
The Voronovs argue that acceptance of the deed discharged their liability and that after the closing, their only obligation was to comply with the terms of the Escrow Agreement. If they did not so comply, their only liability was to forfeit as much of the $1500 escrow as was necessary to complete the repairs. This Court disagrees.
The general rule in Massachusetts is that acceptance of a deed discharges the seller’s contractual duties. Pybus v. Grasso, 317 Mass. 716, 717-18 (1945). “Acceptance of deed” clauses such as the one above, however, have generally applied only to title matters and not to construction problems. See McMahon v. M&D Builders, Inc., 360 Mass. 54, 59-60 (1971). Massachusetts courts have carved out an exception to the general rule for provisions which obligate the seller to perform obligations independent of conveying title, such as those in this case. Pedersen v. Leahy, 397 Mass. 689, 692 (1986) (citing Pybus, supra at 719).[5]
It is clear from the summary judgment materials that the construction and repair work to be completed by the Voronovs was collateral to the delivery of the deed. By the express terms of the Purchase and Sale Agreement, both parties obviously intended that the Voronovs’ obligations would survive conveyance of the deed. This was evidenced by the Escrow Agreement itself. Thus, the “acceptance of deed” provision does not discharge the Voronovs’ obligations.
Further, the Patinkins’ recovery is not limited to the $1500 in escrow. This sum does not constitute a liquidated damages provision. Rather, it is simply security for the required additional work which the parties contemplated in their agreements. See Pedersen, supra at 692.
*192 IV. No Condition Precedent to Relief
The Voronovs argue that the Patinkins failed to satisfy a condition precedent to relief under the Escrow Agreement. Said Agreement provides:
The BUYERS shall choose a qualified building inspector to reinspect the property as soon as possible. If any work remains to be completed in order to bring the property in compliance with the Agreement dated 6/10/91 [PSA], the SELLERS shall cause said work to be performed in a good, workmanlike manner by a qualified contractor. If the SELLERS do not cause said work to be completed as stated, the BUYERS may hire a contractor to complete said work, and the cost of same shall be paid out of the escrow funds.
The Voronovs argue that because the Patinkins did not have the property reinspected, notify the Voronovs of the results or afford the Voronovs an opportunity to make the repairs themselves the Patinkins have failed to satisfy the above condition precedent. A condition precedent “defines an event which must occur . . . before an obligation to perform arises under [a] contract ... If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforcedMassachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991). As the Voronovs’ obligations stem from the Purchase and Sale Agreement as well as the Escrow Agreement, this argument is of no avail.
V. G.L.c. 93A Claim (Count X)
G.L.c. 93A, §2(a) makes unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” (Emphasis added.) Thus it is necessary to decide whether the sale of the Newton property was in the conduct of trade or commerce. Although the statute does not define the words “trade or commerce,” Massachusetts courts have construed this provision to encompass a wide range of activities, Commonwealthv. DeCotis, 366 Mass. 234, 239 (1974), including the “sale ... of any ... property,... real, personal, or mixed.” G.L.c 93A, §l(b). The phrase does not encompass a transaction that is strictly private in nature and not undertaken in the ordinary course of a trade or business. Lantner v. Carson, 374 Mass. 606, 608 (1978). In Lantner, the Court recognized that c. 93A “creates a sharp distinction between a business person and an individual who participates in commercial transactions on a private, nonprofessional basis.” Id. at 610. The Court in Lantner set forth severed factors to consider in determining whether a transaction occurs in a “business context.” These factors have been restated more recently in Nei v. Burley, 388 Mass. 307, 313 (1982), as (1) the nature of the transaction; (2) the character of the parties involved; (3) the activities in which the parties participated; and (4) whether the transaction was motivated by business or personal reasons. “[T]he question of whether a private individual’s participation in an isolated transaction takes place in a ‘business context’ must be determined from the circumstances of each case.” Begelferv. Najarían, 381 Mass. 177, 190-91 (1980).
As to the first factor listed in Nei, in 1988 the Voronovs were living in Natick and had purchased a single-family house in Newton. They initially intended to renovate and then sell the property for profit. Because they were unable to find a buyer and because they could not afford to carry two homes, the Voronovs sold their home in May 1990 and moved into the Newton property. On June 10, 1991, more than one year after they had moved into the Newton house, the Voronovs entered into a purchase and sale agreement with the Patinkins for the house. These facts indicate that the nature of the transaction was a business one. The Newton property was bought, renovated and sold for a profit or business purpose. The fact that economic considerations forced the Voronovs to live in the home at one point does not alter the nature of the undertaking.
With regard to the second factor, the Voronovs own an insurance agency in Brookline. But in the context of the transaction at issue, the Voronovs acted as developers.[6] Thus, the character of the sellers was a professional one.
The third factor is the parties’ level of participation in the transaction. There is nothing in the record to indicate whether the Voronovs played an active role in the transaction.
As to the fourth factor, Zhanna Voronov conceded that the transaction was initially motivated by business reasons. As stated above, the transaction was a business one. The family’s temporary move into the house does not alter that fact.
Thus, consideration of the Nei factors indicates that the purchase and sale transaction at issue in this case occurred in a business context for the purposes of G.L.c. 93A. The Voronovs are “no different from an average developer who holds unimproved land . . . [They were] the moving force . . .” Nei v. Burley, supra at 319 (Abrams, J., dissenting). Cf. Billings v. Wilson, 397 Mass. 614, 616 (1986) (rental of a dwelling unit in an owner-occupied two-family house by a landlord who owned no other rental property was not “trade or commerce” for purposes of c. 93A because the level of commercial activity of the landlord was low and his motivation — mitigating the economic burden of supporting his home — was personal in nature).
In addition to the Nei factors, it is appropriate to consider the purpose of Chapter 93A. The statute’s basic purpose is to provide proper disclosure of information and a more equitable balance in the relationship of consumers to those in business activities. Purity Supreme, Inc. v. Attorney General, 380 Mass. 762 (1980). The seller who engages in an isolated deceptive transaction poses just as much of a threat to the individual consumer he deceives as the seller who routinely engages in such transactions. Given the *193 statutory objective, G.L.c. 93A should be applied to an individual transaction such as the one at issue. There is no public policy reason to exempt the seller who engages in only one business transaction from the ambit of G.L.c. 93A. Accordingly, summary judgment is denied on the Patinkins’ c. 93A claim (Count X).
ORDER
For the foregoing reasons, summary judgment is DENIED on all claims against the Voronovs.

Although plaintiffs’ memorandum states that Mr. Voronov and his brother had renovated other property for resale purposes, the record is devoid of evidence supporting that allegation.

The Agreement states, “It is hereby agreed that the sum of $1,500.00 shall be held from the SELLER’S proceeds, to insure compliance with all of the terms of the Purchase and Sale Agreement dated 6/10/91 between the parties . .. If the SELLERS do not cause said work to be completed as stated, the BUYERS may hire a contractor to complete said work, and the cost of same shall be paid out of the escrow funds. After all work is completed and confirmed by the building inspector, all remaining escrow funds will be returned to the SELLER."

“Nhere is evidence that the Patinkins did not hire two inspectors, but that the Voronovs’ agent, Marly Ginsburg, hired the second inspector on behalf of their principal.

Nhe Complaint also alleges a breach of warraniy arising from “numerous other property defects.”

In Pederson, the buyers brought a breach of contract action against the builder arising out of the construction and sale of the plaintiffs’ house. The PSA contained an “acceptance of deed” clause which is identical to the one in this case. Additionally, at closing, the parties had allocated $750 for additional work on the house. The Court stated that the “acceptance of deed” clause in the PSA did not bar a claim for additional work that was to be completed.

In their brief, the Patinkins contend that Boris Voronov and his brother entered into a joint venture, Harvar Tox Consultants, to renovate this property and previous properties for resale purposes. As stated earlier, there is no evidence of any prior renovation of properties.