[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO CUTPA COUNT
In this case the defendant was the owner of certain property which he sold to the plaintiff. The plaintiff claims the defendant made misrepresentations and omissions of material facts designed to cause the plaintiff to purchase the property. The basis of the complaint is that the defendant misrepresented the actual size of the property and had possession of a survey which would have revealed the actual size but failed to disclose its existence and in fact represented that no such survey existed.
The plaintiff's claim lies in five counts: fraudulent misrepresentation, negligent misrepresentation, breach of covenant of good faith and fair dealing, breach of contract, and a violation of the Connecticut Unfair Trade Practices Act, § 42-110(a), et seq. of the General Statutes (CUTPA). The plaintiff seeks rescission of the contract, restitution, common law punitive damages pursuant to CUTPA, interest, reasonable costs of the action and attorney's fees pursuant to common law and CUTPA.
The defendant has now filed what he styles as a motion for summary judgment as to the CUTPA count, count five. The defendant states in his motion "that the allegations in Count Five of the revised complaint fail as a matter of law." CT Page 8201
It is argued that the conduct alleged in count five does not fall within the purview of CUTPA because the defendant was not in the business of selling real estate and the transaction of selling the house did not constitute the conduct of trade or commerce within the meaning of CUTPA.
All of this sounds suspiciously like a motion to strike, although the court is reluctant to consider it as such since it does not comply with the order of pleadings, P.B. 10-6; an answer and special defense have been filed. To finally resolve this issue, the court will treat the motion as what it represents itself to be but, in light of the posture the defendant has taken regarding the allegations of Count Five, the court will accept these allegations as admitted for the purposes of this motion. Also, by not treating this as a motion to strike, the court can consider certain matters submitted by the plaintiff in opposition to the motion which are outside the pleadings — particularly the defendant's deposition which, for evidentiary purposes, can be regarded as an admission.
This is particularly appropriate when such deposition testimony is offered against the moving party on a motion for summary judgment. Although deposition testimony is not a "judicial admission" and can be explained at the time of trial, it does have evidentiary value and should be given prima facie weight in the summary judgment context until and unless the opposing side files a counter affidavit or other documentation explaining away the admission. That has not been done by the defendant here.
 1.
The issue that must be decided is succinctly put inConnecticut Unfair Trade Practice Act, Langer Morgan and Belt, Vol 1, § 3.2, p. 45.
 "The more substantial issue is whether an act that is isolated from or not part of any ongoing business is in trade or commerce and hence is covered by CUTPA. For example, does the sale by a person of his or her residence, where the person does not otherwise engage in real estate transactions, fall under CUTPA?"
This treatise notes that there has been no appellate case CT Page 8202 deciding this issue and at pp. 45-50 collects the numerous trial court opinions that have dealt with this issue. There is a definite split of authority. A leading case for the proposition that CUTPA does not apply to someone engaged in a single transaction who does not ordinarily engage in such a business transaction is McCarthy v. Fingelly, 4 Conn. L. Rptr. 177 (Katz, J., 1991); cases taking the opposite view are numerous and include Barraco v. Ethan Allan Inc., 6 Conn. L. Rptr. 176
(1992); Jamison v. Atinian, 4 C.S.C.R. 387 (1989).
What must be kept in mind when addressing this matter is that its resolution does not depend on deciding whether a single act can constitute a CUTPA violation — of course it can,Daddona v. Liberty Mobile Home Sales Inc., 209 Conn. 243, 257
(1988); Lembo v. Schlesinger, 15 Conn. App. 150, 154 (1988). As pointed out in McCarthy, "the issue is not whether the litigant is required to allege more than a single transaction but whether CUTPA applies to a single private transaction by a person not employed in the business of making such transactions."
Several years ago, this court concluded that CUTPA should not apply to situations where there is a single transaction engaged in by a party not in the business of making such transactions.Larson Skiba Associates, Inc. v. C C Package Store Inc. etal., 1993 W.L. 524852 The case of Keeler v. Deuth,3 C.S.C.R. 704 (1988) was relied on in Larson Skiba where Judge Healey said that CUTPA should not apply "to a private individual one time seller of a business when that person is not in the business of selling a business." Id. at p. 704. Keeler itself referred to the Massachusetts Consumer Protection Act, M.G.L. C93 A, § 1, et seq., whose language is substantially similar to that of our act and relied on the Massachusetts Supreme Court case of Lantnerv. Carson, 373 N.E.2d 973 (1978). In that regard, our court has said the following:
 "Our conclusion to apply CUTPA to banks is particularly bolstered by the fact that the Supreme Judicial Court of Massachusetts reached a similar conclusion . . . because the `governing statutes in Massachusetts are virtually identical to our own.' . . . We have, therefore, repeatedly looked to the reasoning and decisions of the Supreme Judicial Court of Massachusetts with regard to the scope of CUTPA."
Normand Joseph Enterprises, Inc. v. Connecticut National Bank, CT Page 8203230 Conn. 486, 521 (1994).
Lantner v. Carson, supra, was in fact a case where purchasers of a residence brought an action against private individuals who had sold them a house. The Massachusetts Unfair Trade Practices Act was relied upon to advance a claim for relief in connection with the repair of several defects discovered after the purchasers took occupancy — actual misrepresentations and concealment of defective conditions were alleged. The Lantner
court held that . . . "As broadly and expansively as the statute applies to the regulation of business practices . . . [the Consumer Protection Act] is not available where the transaction is strictly private in nature, and in no way undertaken in the ordinary course of a trade or business. Accordingly, we affirm the dismissal of the plaintiff's complaint," 373 N.E.2d at pp. 974-975. The Lantner court arrived at this position from an analysis of the statutory language and the court's conclusion as to the purposes of the act.
Using what may be called a linguistic analysis, Lantner
first concentrated on § 2 of the Massachusetts act which prescribes "unfair or deceptive acts or practices in the conduct of anytrade or commerce." This is analogous to our § 42-110b(a). It reached its conclusion that its act did not apply because it read the just quoted language as "apply[ing] to those acts or practices which are perpetrated in a business context." Id. page. 977. The court began its analysis which led to this conclusion by conceding that § 1 of its act, which defines "trade" and "commerce" using the same language as our § 42-110a(4), is of minimal use in construing the phrase "in the conduct of any trade or commerce" in § 2 of its act, (§ 42-110b(a) of our act). This is so because the definition in § (our § 42-110a
(4)) merely sets forth certain activities included in those terms "trade" and "commerce." The court went on to say that to define the phrase "in the conduct of any trade or commerce", its act must be read as a whole. The Massachusetts act contains a § 9 which affords a private remedy to the individual consumer and a § 11 that extends the same remedy to "any person who engages in the conduct of any trade or commerce." Lantner
cites an earlier case which held that, by the use of the latter phrase in § 11, their consumer act's protection was extended to business people. The court then reasoned that since words used in one section of a statute must be given the same meaning in another section, when in § 2 of their act the words "unfair or deceptive act or practices in the conduct of any trade or CT Page 8204 commerce" were used, this language must be read to apply to practices that occur only in a business context. This is how theLantner court arrived at its conclusion that an isolated transaction by a person not engaged in such transactions is not covered by the Massachusetts act since such a person is not operating in a "business context." (See discuss at 373 N.E.2d pp. 976-977.)
Our act contains nothing analogous to § 9 and § 11 of the Massachusetts act. There is no dichotomy between remedies for individual consumers and those for business people. See § 42-110g
(a).
But the Lantner case is still instructive because, apart from its linguistic and somewhat esoteric analysis of the Massachusetts statute, it sets forth convincing policy reasons for its holding.
The court cites an earlier case which said the purposes of the act was "to regulate business activities with the view to providing . . . a more equitable balance in the relationship of consumers to persons conducting business activities." Dodd v.Commercial Union Ins. Co., 365 N.E.2d 802, 806 (Mass., 1988).Lantner then went on to say:
 "An individual homeowner who decides to sell his (sic) residence stands in no better bargaining position than the individual consumer. Both parties have rights and liabilities established under common law principles of contract, tort, and property law. Thus, arming the `consumer' in this circumstance does not serve to equalize the positions of buyer and seller. Rather, it serves to give superior rights to only one of the parties, even though as nonprofessionals both stand on an equal footing."
As noted in Langer, Morgan and Belt at § 3.2, page 47, the Massachusetts Supreme Judicial Court in Lantner described the purpose of the Massachusetts' act as being to control business
and thus it does not apply to a "strictly private" sale that was "in no way in the ordinary course of a trade or business." (Emphasis added.) This is not surprising since the Massachusetts' act and ours arise out of the Federal Trade Commission Act (Clayton Act) first passed in 1914 and amended in 1938 by the Wheeler Act to add the "unfair or deceptive acts or practices" language; in fact, our act explicitly refers to the federal act CT Page 8205 and actions of the Federal Trade Commission for guidance, § 42-110b
(2).
In FTC v. Colgate-Palmolive Co., 380 U.S. 374, 384-385
(1964), the court said:
 "When the Commission was created by Congress in 1914, it was directed by § 5 to prevent `[u]nfair methods of competition or commerce.' Congress amended the Act in 1938 to extend the Commission's jurisdiction to include `unfair or deceptive acts or practices in commerce' — a significant amendment showing Congress' concern for consumers as well as for competitors. It is important to note the generality of these standards of illegality; the proscriptions in § 5 are flexible, to be defined with particularity by the myriad of cases from the field of business.' Federal Trade Comm'n v. Motion Picture Advertising Service Co., 344 U.S. 392, 394." (Emphasis added.)
A case decided soon after the 1938 Wheeler Act underlines the historical background and purposes of the Clayton Act and the 1938 amendment and supports the reasoning and conclusion reached by the Lantner court. That case is Scientific Mfg. Co. v. FederalTrade Commission, 124 F.2d 640 (CA 3, 1941). There the court said the 1914 Clayton Act declared "unfair methods of competition in commerce" to be unlawful. A series of cases under the 1914 act delineated a broad range of permissible activity by the FTC "in matters involving unfair trade or commercial acts or practices for the advantage of the offender over competitors and to the detriment of the public." Id., page 643.
 "Then came the decision in Federal Trade Commission v. Raladam Co., 283 U.S. 643, 654, where the Supreme Court held that `one of the facts necessary to support [the Commission's] jurisdiction to make the final order to cease and desist, is the existence of competition;' etc. . . . In the presence of this jurisdictional requirement, it became apparent that there could be instances of unfair or deceptive acts or practices in commerce injurious to the public which the Commission was without jurisdiction to prevent. Such was the case where the offender had a monopoly (i.e., no competitors) or where all competitors in a particular trade made use of the same practices. Moreover, even CT Page 8206 where competition did actually exist, although obscure, it was time-consuming and expensive for the Commission to develop the essential fact of competition. It was for the purpose of clothing the Commission with jurisdiction to act in respect of unfair acts or practices in commerce regardless of their effect upon competition that the amendment of 1938 was offered and enacted. True enough, as the Commission argues, the effect of the amendment was to so broaden the Commission's jurisdiction as to enable it to act where only the public interest was adversely affected by the unfair practices. None the less, it was still the unfair acts of traders in the affected commerce that the Commission was empowered to enjoin. The public interest to be served is no different under the amendment than it was under the original Act." (Emphasis added.) Id., page 643.
For the above stated reasons, this court agrees with the conclusion reached by Lantner and does not change its views as expressed in Larson Skiba Associates, Inc. v. C C PackageStore, Inc., et al., supra. The purpose of the Clayton Act as amended by the Wheeler Act and the purpose of CUTPA was to control the activity of business vis-a-vis other competitors and consumers with the ultimate welfare of the consumer in mind. There was no intention to have these acts apply to single transactions by persons not engaged in the business of making such transactions.[1]
The plaintiff, however, also argues that even under the reasoning of a case like Lantner, CUTPA should apply. The deposition of the defendant indicates he was a lawyer and had been involved in fourteen prior real estate closings. The plaintiff claims the defendant, as a sophisticated lawyer dealing with a layperson, should be held subject to the act. The argument, however, is not convincing. The point is that no matter how "sophisticated" a seller is in a case like this, if he or she is not engaged in the business of selling real estate, the act should not apply. If in fact misrepresentations were made here by a lawyer who knew the purposes and procedures of real estate closings and the disclosures normally made and expected to be made in such matters, that would be powerful evidence in any fraud or misrepresentation common law count. But it should not be used as a factor or reason to extend the reach of these consumer protection acts willy-nilly. In other words, if Lantner is CT Page 8207 correct in holding that single transactions engaged in by offenders not engaged in the business of such transactions should not be covered by these consumer protection acts for the reasons discussed, what difference as such should it make that in a particular case the seller is more "sophisticated" than the buyer? Should the reach of CUTPA be determined by some necessarily imprecise analysis regarding the relative bargaining power of contracting parties? What about a situation where the seller had a college education and the buyer only went to grammar school? What if the seller worked as a secretary in a real estate office or took courses in a community college on real estate transactions — should the act then apply? Why, if the reasoning of Lantner is correct?
We've reached the point with CUTPA where some bright lines must begin to be drawn as to the ambit of the act; fashioning definitions derived from the historic purposes of the federal act which produced legislation like that of Connecticut and our sister state is a good starting point to begin formulating such rules. See Lantner and Scientific Mfg. Co., supra.
Therefore, the court grants the motion as to the fifth count asserting a CUTPA violation.
Corradino, J.