Greco, P.J.
During closing arguments, the trial judge said to plaintiff-appellants’ attorney: “There are so many reasons why this case doesn’t work.” He was right. The plaintiffs, John D. and Nilla M. Gambill (“the Gambills”), sued Michael D. and Ariana L. Packard (“the Packards”) for breach of an alleged contract “to pay all expenses associated with the [Gambills’] transfer of a fifteen-foot parcel of land in Plymouth, Massachusetts, to [the Packards] .’’The Gambills’ complaint included a second claim against the Packards under G.L.c. 93A for the same conduct. The claims arose out of the following, somewhat convoluted scenario.
On August 9, 2002, Mr. Gambill’s sister deeded to the Gambills a lot of land adjacent to a second lot she owned in Plymouth for $20,000.00. The sister retained a fifteen-foot right of way on the deeded lot for her own benefit. In return, the Gambills gave the sister a mortgage. This was not a typical mortgage executed to finance the purchase, but was instead a vehicle used to “secure” the Gambills’ obligation to convey the fifteen-foot strip of land to the sister upon her written request.[3] About a month later, the sister entered into a purchase and sale agreement (“P&S”) with the Packards for their purchase of her second lot. The sister was clearly identified as the “SELLER,” and the Packards as the “BUYER(s).” The P&S provided that if the BUYER wished to obtain a deed to the fifteen-foot strip of land on the lot purchased by the Gambills, the BUYER could give notice to the SELLER within one year. Presumably, the sister would have then exercised her right under the mortgage to require the Gambills to transfer the land to her so that she could, in turn, transfer it to the Packards.
The sale between the Packards and the sister closed on September 24,2006. On the same day, the sister assigned to the Packards her rights under the mortgage given by the Gambills. Thus, the middleman in any transfer of the fifteen-foot strip from the Gambills to the Packards was eliminated, allowing the Packards to request the transfer directly from the Gambills. They made that request in February, 2003, and then took steps to hasten the process. The Packards paid to have the land surveyed by the same company, and a deed prepared by the same lawyer, *149 that the Gambills had used previously. Problems arose, however, when the Gambills contended that the new survey and deed provided for a twenty-foot strip rather than a fifteen-foot strip of land. That issue was ultimately resolved, and the Gambills did, in fact, convey the strip of land to the Packards.
The Gambills then brought this suit for reimbursement of $4,429.40 in legal fees that they claimed they were forced to incur to correct the discrepancy in the strip’s width. Without admitting that they owed anything, the Packards offered to settle the matter for $1,200.00. The Gambills refused, and by the time of trial, their claim for legal fees had soared to $12,000.00. Their G.L.c. 93A claim also seemed to be based on the Packards’ refusal to reimburse them for legal fees and on some notion, suggested at trial, that the Packards violated the implied covenant of fair dealing.
The Gambills contended that the P&S obligated the Packards to pay for any expense they incurred in connection with the transfer of the fifteen-foot strip of land. In his opening statement, the Gambills’ attorney contended that if the Packards “wanted to acquire the fifteen-foot-wide strip of land,” then the P&S required them “to give notice to the Gambills within one year of September 27th, 2002, and to pay all expenses associated with the Gambills’ transfer of the fifteen-foot-wide strip of land to them.” The P&S did no such thing. It was an agreement between the Packards and the sister. Although Mr. Gambill testified that he “was referenced as the seller,” the first sentence in the P&S clearly identifies the sister as the seller and the Packards as the buyers. The Gambills are never mentioned. Undaunted, the Gambills also argued that they were third party beneficiaries under the agreement. The trial judge’s finding to the contrary was fully warranted, if not compelled, by the evidence.
First, the Packards were not exercising any rights given them under the P&S. By virtue of the assignment of the mortgage, the sister ceased to play any role in the transaction and the P&S became irrelevant. The Packards were simply exercising their rights as assignees. If, arguendo, we treat the purchase and sale agreement as the operative document, any recovery by the Gambills as third party beneficiaries would have required evidence that the parties to the P&S “intended to give [them] the benefit of the promised performance. We look to the language and circumstances of the contract for indicia of intention. The intent must be clear and definite” (Citations omitted). Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366-377 (1997). See also Lakew v. Massachusetts Bay Transp. Auth., 65 Mass. App. Ct. 794, 797-798 (2006). Moreover, Massachusetts has adopted §302 of the RESTATEMENT (Second) of Contracts (1981), which provides:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
In the P&S, the Packards promised to pay for any expense the sister incurred in exercising her right under the mortgage to require the Gambills to convey the right of way to her so that she could then convey the land strip to the Packards. There is nothing in the P&S, or in the mortgage, evincing an intent on the part of the Packards, the sister, or anyone standing in her shoes as an assignee to pay any expense incurred by the Gambills. The absence of such an agreement is not surprising; otherwise, the Packards would have been agreeing to pay the expenses of individuals who were resisting doing what they had already promised to do. Under *150 the Gambills’ theory, they could have refused to convey the land strip, forced the Packards to foreclose on the mortgage, and to pay the Gambills’ attorney’s fees at the foreclosure proceeding. In these circumstances, the trial judge properly concluded that any attorney’s fees incurred by the Gambills “were discretionary and were not contemplated” by any agreement between the parties.
As the Packards were not obligated to pay the Gambills’ expenses, the Gambills’ related G.L.c. 93A claim must also fail. Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 85-86 (2004). In any event, G.L.C. 93A has no application in this case. “[T]he proscription in [G.L.c. 93A,] §2 of ‘unfair or deceptive acts or practices in the conduct of any trade or commerce’ must be read to apply to those acts or practices which are perpetrated in a business context.” Lantner v. Carson, 374 Mass. 606, 611 (1978). See Arthur D. Little, Inc. v. East Cambridge Sav. Bank, 35 Mass. App. Ct. 734, 743 (1994). The statute was designed to provide “a more equitable balance in the relationship of consumers to persons conducting business activities.” Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 80 (1977), quoting Commonwealth v. DeCotis, 366 Mass. 234, 238 (1974). This case, however, involved a conveyance between two private parties. It is immaterial whether the Packards may have intended to rent out the residence on the property. The dispute did not arise out of a landlord/tenant relationship. As the Supreme Judicial Court stated in Lantner, “arming the ‘consumer’ in this circumstance does not serve to equalize the positions of... [the parties]. Rather, it serves to give superior rights to only one of the parties, even though as nonprofessionals both stand on equal footing.” Lanter, supra at 612.
Finally, even if G.L.c. 93A applied here, the trial judge’s finding that there was no violation would have been warranted. The Packards were exercising their rights under the assignment. They tried to minimize their costs and the Gambills’ by using the same surveyor and attorney who had been involved in the Gambills’ purchase from Mr. Gambill’s sister. The Packards paid for those services and also for the recording fee. Even given a mistake in the measurement of the land strip, the evidence permitted the finding that it was a simple mistake by third parties for which the Packards had no responsibility. There was no bad faith here.
Two final matters must be addressed. First, the Gambills allege that it was error to preclude Mr. Gambill from testifying about the accuracy of the survey on the ground that he was not qualified as an expert to do so. Mr. Gambill was allowed, however, to testify as to his understanding of the boundaries of his property. More importantly, any testimony by him about the survey would have been inconsequential because the trial judge, in finding for the Packards, assumed that the initial survey was incorrect. The measurement was corrected before the conveyance took place.
Finally, the Gambills make the somewhat bizarre argument that they were never given their day in court, and that “the trial judge did not allow any testimony but based his decision upon offers of proof and documents entered into evidence.” There was a jury-waived trial before a judge. Mr. Gambill testified. Various documents were admitted into evidence. The trial judge did accept offers of proof from the Gambills on some issues, but it was clear that he intended to accept the evidence as true for purposes of making his rulings of law. At other times, the judge tried to narrow the issues by ascertaining from counsel where there was agreement. In this regard, counsel for the Gambills agreed with the judge that “it comes down to a legal question of whether there’s a contract to enforce.” At one point, counsel for the Packards moved to dismiss in view of the offers of proof made by the Gambills. The trial judge stated, “we’ll go forward,” and Mr. Gambill resumed his testimony. Before closing arguments, the trial judge asked, “Is there anything else that anyone wants me to have,” and, later, “Well, at this point I’m going to take any evidence that any party wants to offer.” Any suggestion that the proceeding in the trial court was akin to a motion for a directed finding has no merit. Therefore, *151 the additional argument by the Gambills that we “must view the evidence in the light most favorable to the plaintiffs” also fails.
Judgment for the defendants is affirméd. Appeal dismissed.
So ordered.

 See Maglione v. BancBoston Mtge. Corp., 29 Mass. App. Ct. 88, 90 (1990) (“So it is that the mortgagor retains an equity of redemption, and upon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee’s interest in the real property comes to an end” [emphasis supplied; citation omitted]).